THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Lead Plaintiff Michael McGrath, along with Robert Akenbauer, Michael Ameral, Paul Anderson, Paul Beckford, Christine Bork, Douglas Brioso, Pat Canty, Michael Capasso, Ashley Catatao, Fernando Cicerone, Shaun Clark, Ariel Collazo, Christopher Collette, Walter Collette, Jason Costa, George Dervishian, Mark Difava, Dante Difronzo, Derrick E. Dottin, Shannon N. Dottin, Robert Driscoll, Juan Ducasse, Christopher Fusco, Richard Gilberti, Cassandra Goncalves, Kevin Goulart, Robert Hartsgrove, Robert W. Hickey, Michael ("Mr. Netherlands") Holland, James Hyde, Randy Isaacs, Yvon Jean-Jacques, Stephen Jones, Matthew Khoury, Eli Kim, Guerdy Legros, Alexander Lorenti, Maryanne Manfra, Oswaldo S. Martinez, Kathryn McDaid, James McNally, Carlos Melos, Samir Messaoudi, Alan Monaco, Natacha Montina-Garcia, Joseph Moreira, Ernie Nadile, Dorothy Nardone, Mark Nevin, Eric O'Brien, John Oliveira, Robert Pasquelino, Brian Pavao, Michael Perrone, Frandiane Prophete, Mark Pulli, James Radochia, Jose Ramirez, Courtney Reece, Daniel Rego, Louis Remigio, Joseph Rivera, David Ruf, Devin Schneider, Kevin Shackelford, James Slattery, Eduardo Soares, Tyler Sousa, Timothy Sullivan, Joseph Teves, Erick Ubeda, Timothy Van Nostrand and Michael Wyatt.<br><br>   Plaintiffs<br><br> v.<br><br>City of Somerville,<br><br>   Defendant | USDC Case No. _____ |

**COMPLAINT OF VIOLATION OF THE FAIR LABOR STANDARDS ACT AND MASSACHUSETTS WAGE ACT**

**INTRODUCTION**

1. The Plaintiffs—Michael McGrath and the seventy-three other individuals listed <u>infra</u> at ¶2—are current and former police officers who are or were employed by the City of Somerville Massachusetts for all or a portion of the period between May 26, 2014 through the date this complaint was filed on May 26, 2017. This group of individuals shall be referred to hereinafter as "Plaintiffs."

2. The seventy-three additional Plaintiffs referenced <u>supra</u> at ¶1 are as follows:

| | | | | | |
|---|---|---|---|---|---|
| 1. | Akenbauer | Robert | 38. | Manfra | Maryanne |
| 2. | Ameral | Michael | 39. | Martinez | Oswaldo S. |
| 3. | Anderson | Paul | 40. | McDaid | Kathryn |
| 4. | Beckford | Paul | 41. | McNally | James |
| 5. | Bork | Christine | 42. | Melo | Carlos |
| 6. | Brioso | Douglas | 43. | Messaoudi | Samir |
| 7. | Canty | Pat | 44. | Monaco | Alan |
| 8. | Capasso | Michael | 45. | Montina-Garcia | Natacha |
| 9. | Catatao | Ashley | 46. | Moreira | Joseph |
| 10. | Cicerone | Fernando | 47. | Nadile | Ernie |
| 11. | Clark | Shaun | 48. | Nardone | Dorothy |
| 12. | Collazo | Ariel | 49. | Nevin | Mark |
| 13. | Collette | Christopher | 50. | O'Brien | Eric |
| 14. | Collette | Walter | 51. | Oliveira | John |
| 15. | Costa | Jason | 52. | Pasquelino | Robert |
| 16. | Dervishian | George | 53. | Pavao | Brian |
| 17. | Difava | Mark | 54. | Perrone | Michael |
| 18. | Difronzo | Dante | 55. | Prophete | Frandiane |
| 19. | Dottin | Derrick E. | 56. | Pulli | Mark |
| 20. | Dottin | Shannon N. | 57. | Radochia | James |
| 21. | Driscoll | Robert | 58. | Ramirez | Jose |
| 22. | Ducasse | Juan | 59. | Reece | Courtney |
| 23. | Fusco | Christopher | 60. | Rego | Daniel |
| 24. | Gilberti | Richard | 61. | Remigio | Louis |
| 25. | Goncalves | Cassandra | 62. | Rivera | Joseph |
| 26. | Goulart | Kevin | 63. | Ruf | David |
| 27. | Hartsgrove | Robert | 64. | Schneider | Devin |
| 28. | Hickey | Robert W. | 65. | Shackelford | Kevin |
| 29. | Holland | Michael | 66. | Slattery | James |
| 30. | Hyde | James | 67. | Soares | Eduardo |
| 31. | Isaacs | Randy | 68. | Sousa | Tyler |
| 32. | Jean-Jacques | Yvon | 69. | Sullivan | Timothy |
| 33. | Jones | Stephen | 70. | Teves | Joseph |
| 34. | Khoury | Matthew | 71. | Ubeda | Erick |
| 35. | Kim | Eli | 72. | Van Nostrand | Timothy |
| 36. | Legros | Guerdy | 73. | Wyatt | Michael |
| 37. | Lorenti | Alexander | | | |

3. Each of the Plaintiffs is or was an "employee" within the meaning of both federal and state wage and hour laws, as follows:

    (A) Section 203(e) of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 et seq. ("FLSA"); and,

    (B) General Laws chapter 149, sections 148, 150 (Massachusetts "Wage Act").

4. The Defendant in this action is the City of Somerville, Massachusetts (hereinafter "City").

5. The City is an "employer" within the meaning of Section 203(b) of the FLSA, as amended, 29 U.S.C. §201 et seq.; and "a person having employees in his service" and "employer" within the meaning G. L. c.149, §§ 148, 150.

6. By this complaint Plaintiffs seek unpaid overtime wages as well as "liquidated damages" under the FLSA; unpaid overtime wages and "treble damages" under the Massachusetts Wage Act; plus attorneys fees, costs incurred in this action, and other applicable relief under both the FLSA and Massachusetts Wage Act; all for the period May 26, 2014 through May 26 2017.

7. On May 26, 2017 the undersigned law firm of McDonald Lamond Canzoneri filed a complaint with the Massachusetts Attorney General pursuant to G. L. c. 149, § 150 on behalf of the Plaintiffs for failure to pay overtime as required by the Massachusetts Wage Act. This is sufficient to authorize the

Massachusetts Wage Act claim set forth in Count II. Plaintiffs will furnish the Right to Sue letter issued by the Attorney General forthwith upon its issuance.

**JURISDICTION**

8. Jurisdiction over this action is conferred on the court for the FLSA claim by 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331, 1337; and for the Massachusetts Wage Act claim by G. L. c.149, § 150, as well as the federal supplemental jurisdiction statute 28 U.S.C. § 1367(a).

9. This court is the proper venue for this action pursuant to 28 U.S.C. §1391(b).

**FACTUAL BACKGROUND**

10. At all times relevant, plaintiffs worked one of two regular schedules: some worked a so-called "4-2" schedule that consisted of a recurring pattern of four consecutive days working an eight hour shift followed by two days off (hereinafter the "4-2 schedule"); others worked a regular schedule pattern referred to as a "5-2" or "administrative" schedule that consisted of working five consecutive days on duty followed by two days off duty (hereinafter the "administrative schedule" or "5-2 schedule").

11. Plaintiffs who worked the 4-2 schedule and 5-2 schedule worked 1946.56 hours per year pursuant to such regularly scheduled hours. If there were no adjustment to the schedule of Plaintiffs working the 5-2 schedule, those Plaintiffs would work 2080 hours per year rather than 1946.56 hours per year. In order to equalize the number of hours per year that Plaintiffs worked

on the 4-2 and 5-2 schedule, Plaintiffs who were assigned to the 5-2 schedule were afforded sufficient extra paid days off, referred to as "*5-2 days,*" so that their regular 5-2 schedule would require the same number of hours of work per year as the 4-2 schedule—specifically 1946.56 per year.

12. Plaintiffs were paid three elements of compensation that were intended to compensate Plaintiffs for working 1946.56 hours per year pursuant to their regular 4-2 or 5-2 schedule, referred to herein collectively as "annual base pay," as follows:

(a) annual salary;

(b) "night availability" differential computed at 6% of their annual salary; and,

(c) education incentive pursuant to M.G.L. Chapter 41, §108L, referred to as "Quinn Bill" incentive, computed as a percentage of annual salary depending on the level of the degree in law enforcement, including 10% for an Associate Degree or 60 points earned towards a Baccalaureate Degree; 20% for a Baccalaureate Degree; and 25% for a Master's Degree or Law Degree.

13. In addition to annual base pay described <u>supra</u> at ¶12, the City paid Plaintiffs at least seven additional wage augments, also intended to compensate them for working 1946.56 hours per year pursuant to their regular 4-2 or 5-2 schedule, as follows:

(a) <u>Night shift.</u>  The City paid Plaintiffs who regularly worked the night shift a weekly stipend that total $1,000 per year ($19.23/week).[1]

(b) <u>Longevity bonus.</u>  The City paid Plaintiffs with more than five years of service, and who do not receive an education incentive, a longevity bonus.  This longevity bonus varies from $800–$2,100 annually depending on length of service.

(c) <u>Senior Longevity.</u>  The City paid Plaintiffs with more than 20 years of service a *senior* longevity differential (in addition to the above longevity bonus and regardless of whether the recipient receives an education incentive), which varies from $800–$3,200 annually depending on length of service.

(d) <u>Weekend Differential</u>.  The City paid Plaintiffs who were regularly scheduled to work weekends, a weekend differential of $6.50 per hour (day shift) or $7.50 per hour (evening and night shifts).

(e) <u>Weapons Qualification Stipend.</u>  The City paid Plaintiffs an annual weapons qualification stipend of $425–$600 depending on their score on the qualification test.

(f) <u>Weapons of Mass Destruction Stipend.</u>  The City paid Plaintiffs an annual weapons of mass destruction stipend of $500.

(g) <u>Education Incentive (non-law enforcement).</u>  The City paid Plaintiffs an annual education incentive stipend to officers who

---

[1] This is in addition to the previously mentioned "6% night availability differential" which is paid to all Plaintiffs, regardless of whether they regularly work the night shift that is included for purposes of this complaint within the aforementioned definition of "annual base pay" <u>supra</u> ¶12.

have attained a non-law enforcement related college degree of $300 (associates degree) or $500 (baccalaureate degree).

14. The City also paid officers a special rate of pay referred to as a "detail rate." The "detail rate" was a non-premium, straight time rate of pay that is separate and distinct from the non-premium, straight time hourly rate paid to officers computed from their annual base pay and seven wage augments described <u>supra</u> at ¶¶12–13.

15. The detail rate was paid for work that Plaintiffs performed that is categorized for purposes of this complaint as "Private Details" and "City details" as described <u>infra</u> at ¶¶16-17, and is exclusive of the 1946.56 hours of regular police work that Plaintiffs performed pursuant to their regular 4-2 or 5-2 schedule.

16. <u>Private Details.</u> The detail rate was paid for situations when a private vendor was performing work that required monitoring for public safety and/or traffic control by a police officer, such as a telephone company, electric company, gas company, or private construction company, performing work that impacted traffic on public streets. These details are referred to herein as "Private Details."

17. <u>City Details.</u> The detail rate was also paid for situations when City workers, or a vendor hired by the City, performed work that required monitoring for public security, safety and/or traffic control by police officers. These types of details are referred to herein as "City Details," examples of which include the following:

8

(a) when employees from the City's Department of Public Works, Highway Division, Water and Sewer Division performed work on a road (e.g., repair, non-emergency snow removal that requires traffic control);

(b) when a private water line maintenance and repair company, a paving company, a tree removal and pruning company, or a private construction company that redesigns public squares were hired by the City to perform work on behalf of the City;

(c) when the City's Fire Department required a specialized patrol for arson control in a geographic area; and,

(d) when the School Department required a police officer for public security, safety and/or traffic control for high school sporting events such as football games, basketball games, or non-sporting school event such as graduation.

18. When Plaintiffs perform regular police work for which they were paid their annual base rate, and City details, they were performing work on behalf of the City. Hereinafter the expression "work(ed) on behalf of the City" includes such regular police work and City Details.

19. From May 26, 2014 through May 26, 2017, Plaintiffs worked on behalf of the City in excess of 40 weekly hours.

20. When Plaintiffs performed *regular police work* (i.e., excluding Private or City Details) in excess of 40 hours in a 7-day work period, the Plaintiffs were paid premium compensation referred to as "overtime."

9

21. The City did not count City Details as hours worked on behalf of the City, and did not pay overtime to the extent that a Plaintiff worked in excess of 40 hours in a 7-day work period as a result of working City Details.

22. In calculating the overtime rate paid to Plaintiffs for regular police work performed in excess of 40-hours in a 7-day work period, the City divided each Plaintiff's annual base pay by 2,080 hours to find an hourly rate, and then multiplied such hourly rate by 1.5 to find each Plaintiff's overtime rate.

23. By dividing the annual base pay by a denominator of 2080 hours rather than 1946.56 hours, the City divided annual base pay by a denominator that was higher than the actual number of hours per year that the annual base pay was intended to compensate; this resulted in the City paying an overtime rate that was lower than if the annual base pay was divided by the true number of hours that the annual base pay was intended to compensate of 1946.56 hours per year.

24. In computing overtime rate, the City only accounted for the annual base pay, but excluded all other forms of regular, non-premium, straight time compensation such as—the seven wage augments described supra at ¶13 (a) to (g), and the detail rate paid when Plaintiffs worked City Details described supra at ¶¶14–15, 17.

25. The City routinely paid Plaintiffs Private Details and City Details on a delayed basis, weeks or months after the regular weekly payday.

## COUNT I (FLSA)

26. With respect to the first count, Plaintiffs incorporate by reference and re-allege each of the foregoing paragraphs 1-25 as if fully set forth here.

27. The FLSA requires the City to pay Plaintiffs for all work performed in excess of 40-hours in a 7-day work period "at a rate not less than one and one-half times the <u>regular rate</u> at which he is employed." 29 U.S.C. §207(a) (emphasis added).

28. In computing the FLSA "regular rate" and corresponding overtime rate, the City unlawfully excluded regular compensation that is paid for the seven wage augments described <u>supra</u> at ¶13 (a) to (g) and City Details described <u>supra</u> at ¶¶14–15, 17.

29. In computing the regular rate from the annual base pay as described <u>supra</u> at ¶12 (i.e., annual salary, 6% night availability differential, and education incentive), the City artificially lowered the FLSA "regular rate" by unlawfully dividing the annual base pay by a denominator that is higher than the annual base pay is intended to compensate—specifically by dividing the annual base pay by the inaccurate figure of 2080 hours per year rather than the true figure of 1946.56 hours per year.

30. Even though City Details are time worked on behalf of the City and therefore should be counted as hours worked for the City, the City failed to account for hours worked by Plaintiffs on City Details in computing total hours worked and overtime owing to Plaintiffs in the 7-day work period, and routinely

11

paid for Private Details and City details weeks or months after the regular weekly pay day.

31. By the foregoing overtime computation and payment practices, the City violated the FLSA by willfully and intentionally failing and refusing to pay Plaintiffs all overtime required by the FLSA between on or about May 26, 2014 and May 26, 2017.

**COUNT II (WAGE ACT)**

32. With respect to the second count, Plaintiffs incorporate by reference and re-allege each of the foregoing paragraphs 1-31 as if fully set forth here.

33. Because Plaintiffs were entitled to overtime pay for any weekly hours worked on behalf of the City in excess of 40 hours pursuant to the FLSA, and because Plaintiffs completed labor in excess of 40 hours in a 7-day work period during one or more weeks between May 26, 2014 and May 26, 2017, the Plaintiff's "earned" those overtime wages under the FLSA.

34. Because the City failed to pay these "earned" overtime wages as required by the FLSA within seven days of the termination of the relevant pay periods, the City violated G. L. c. 149, §§ 148, 150.

**WHEREFORE**, Plaintiffs respectfully request that the Court:

A. Order the Defendant, under supervision of Plaintiffs' counsel or their designated agents or representatives, to make a complete and accurate accounting of unpaid overtime compensation owing to each Plaintiff under the FLSA starting three years prior to the date that the instant complaint was filed in Federal District Court to the date of judgment.

B. Enter a judgment under FLSA Section 216 against Defendant for payment of back wages for unpaid overtime compensation—plus an equal amount in liquidated damages—owing to each Plaintiff for the three years prior to the date that the instant complaint was filed in Federal District Court to the date of judgment,[2] plus all reasonable attorneys' fees and costs incurred by Plaintiffs in prosecuting this FLSA complaint.

C. Order the Defendant, under supervision of Plaintiffs' counsel or their designated agents or representatives, to make a complete and accurate accounting of unpaid overtime compensation owing to each Plaintiff under the G. L. c. 149, §§ 148, 150 starting three years prior to the date that the instant complaint was filed in Federal District Court to the date of judgment.

D. Enter a judgment under G. L. c. 149, §§ 148, 150 against Defendant for payment of unpaid, earned compensation—plus an equal amount in treble damages—owing to each Plaintiff for the three years prior to the date that the instant complaint was filed in Federal District Court to the

---

[2] Assuming arguendo that no liquidated damages are held owing for any portion of the backpay liability—and Plaintiffs in now way concede that point—Plaintiffs then respectfully request that the Court enter a judgment against Defendant for prejudgment statutory interest on all such amounts.

date of judgment, plus all reasonable attorneys' fees and costs incurred by Plaintiffs in prosecuting the Massachusetts Wage Act claim.

    E.    Enter orders and judgments as may otherwise be a just and proper to remedy the Defendant's unlawful violations of the statutes relayed above.

Respectfully submitted,

For Plaintiffs,

By Plaintiffs' Counsel:

*/s/ Jack J. Canzoneri*
Jack J. Canzoneri, BBO #564126
jcanzoneri@masslaborlawyers.com
Dennis Coyne, BBO #681389
dcoyne@masslaborlawyers.com
McDonald Lamond Canzoneri
352 Turnpike Road, Suite 310
Southborough, MA  01772-1756
(508) 485-6600

Dated:  May 26, 2017