**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| |
|---|
| MICHAEL MCGRATH, ET AL. |
| Plaintiffs, |
| v. |
| CITY OF SOMERVILLE, |
| Defendant. |

Civil Action No. 1:17-cv-10979

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS**
**MOTION FOR SUMMARY JUDGMENT**

*(LEAVE TO FILE EXCESS PAGE GRANTED ON DECEMBER 21, 2018 (DKT. 87))*

**Table Of Contents**

Page

I.  INTRODUCTION ................................................................................................. 1

II. SUMMARY OF ARGUMENT ............................................................................ 2

III. STATEMENT OF FACTS .................................................................................. 3

   A.  The Collective Bargaining Agreement Sets Forth the Parties' Agreement
       with Respect to the Terms and Conditions of Plaintiffs' Compensation. .............. 3

       1.  The Relevant Parties to this Litigation. ................................................... 3

       2.  The Collective Bargaining Agreement. ................................................... 3

           a.  The Relevant CBA Provisions Governing Assignments,
               Schedules, and Shifts. .................................................... 4

           b.  Compensation. ...................................................................... 5

           c.  Overtime Compensation. .................................................... 7

           d.  Police Details. ...................................................................... 8

           e.  Union Business Days. .......................................................... 10

           f.  Special Details For Federal Agencies. ............................. 10

           g.  Other Plaintiffs have not worked more than 40 hours in the
               two years prior to filing this litigation. ............................. 11

   B.  Plaintiffs Brought this Litigation Without Attempting to Bargain Over the
       Underlying Issues. .......................................................................................... 11

       1.  The City's Personnel Director and Payroll Director Understood
           that the Terms of the CBA Govern Plaintiffs' Compensation. ................. 11

       2.  Plaintiff McGrath First Questioned His Regular Rate Calculation
           in Late 2016, and the City Promptly Investigated. .................................. 12

       3.  Plaintiffs Filed the Present Litigation. ................................................... 13

IV. ARGUMENT ..................................................................................................... 14

   A.  The City Is Entitled To Summary Judgment on the Merits of Plaintiffs'
       Claims. ............................................................................................................. 14

## Table of Contents (continued)

Page

1.   Plaintiffs Who Have Not Worked More Than 40 Hours in a
     Workweek Cannot Articulate a Claim. ................................................... 14

     a.   Union Business Days do not count towards the 40 hour
          threshold. ........................................................................................ 15

     b.   Work performed by Plaintiffs assigned to long-term details
          with outside federal agencies is excluded from the regular
          rate calculations. .......................................................................... 15

     c.   Applying a two year statute of limitations, at least two
          additional Plaintiffs simply have not worked more than 40
          hours in a workweek. ..................................................................... 17

2.   Pursuant to 29 U.S.C. § 207(k), the Proper Threshold for
     Determining Plaintiffs' Eligibility for Overtime Compensation Is
     43 Hours - Not 40. ................................................................................... 17

     a.   Congress created a unique overtime threshold for police
          officers. ......................................................................................... 17

     b.   The City operates a 7-day work period. ......................................... 18

     c.   CBA provisions for contractual overtime do not affect the
          City's entitlement to the Section 207(k) exemption. .................... 19

     d.   The CBA establishes a 7-day work period for 5-2 Plaintiffs. ........ 20

3.   The Proper Denominator for Calculating Regular Hourly Rate Is
     an Individualized Calculation or, if Determinable as to the Group,
     is 2,080 Hours. ........................................................................................ 21

     a.   The denominator must be determined on an individualized,
          week-by-week basis based on the hours Plaintiffs actually
          worked. ........................................................................................... 21

     b.   If the denominator is based on the Parties' stated intention
          with respect to the compensation, the CBA mandates a
          denominator of 2,080. ................................................................... 22

4.   The Wage Act Does Not Multiply Damages for Alleged FLSA
     Violations. ............................................................................................... 24

5.   Plaintiffs' Claims in Count III Fail as a Matter of Law. ........................... 26

**Table of Contents (continued)**

Page

a.    The Municipal Finance Law, Rather than the Wage Act,
Governs Payment for Private Details............................................. 26

b.    The CBA Governs Timing for Payment of City Details............... 28

c.    Roll call is compensated by Plaintiffs' base salary....................... 29

B.    The City is Entitled to Summary Judgment as to Legal Issues Concerning
the Proper Measure of Any FLSA Damages. ....................................... 31

1.    The Statute of Limitations Governing Plaintiffs' FLSA Claims Is
Two Years in the Absence of Evidence that the City Willfully
Violated the Statute.................................................................. 31

2.    Plaintiffs Are Not Entitled to Liquidated Damages Because the
City Acted in Good Faith with Respect to Its Regular Rate
Calculations............................................................................. 33

3.    The City Is Entitled to Offset Any FLSA Liability with All
Premium Payments Already Paid to Plaintiffs.......................... 35

4.    For Claims Based on Late Payments, Plaintiffs Can Recover Only
Interest Based on the Delay in Payment. .................................. 39

5.    The City Is Immune from Prejudgment Interest Under G.L. c. 231......... 42

V.    CONCLUSION.......................................................................................... 44

# I.     INTRODUCTION

It is undisputed that a collective bargaining agreement negotiated by the Somerville Police Employee's Association (the "Union") and the City of Somerville ("Defendant" or the "City") governs the terms and conditions of compensation for all of the City's non-superior police officers, including the eighty-three plaintiffs in this case (the "Plaintiffs").   By the Second Amended Complaint (Dkt. 27, the "Complaint"), Plaintiffs do not allege that the City breached the terms of that agreement.   Rather, Plaintiffs allege that by *complying* with the bargained-for terms of the agreement that govern the calculation of their regular rate of pay for the purpose of overtime compensation, the City has violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "FLSA").   They also allege that again by *complying* with the collective bargaining agreement, the City violated the Massachusetts Wage Act, G.L. c. 149, §§ 148, 150 (the "Wage Act"), including with respect to the timing of compensation for police details.

Plaintiffs' claims are highly technical in nature and implicate a number of interrelated statutory provisions of the FLSA, the regulations implementing that statute, and the provisions of the Wage Act, bearing on how much Plaintiffs are entitled to be paid for various aspects of their work for the City and the time period in which such sums are to be paid.  As to several of Plaintiffs' claims, the record is undisputed and demonstrates the City's compliance with the applicable legal requirements, and the City is entitled to summary judgment on those claims.  Certain of Plaintiffs' claims that are not be susceptible to summary judgment as to liability, due to the existence of factual disputes, are ripe and appropriate for summary judgment as to the proper method of calculating any potential damages Plaintiffs may be due, if they prevail at trial.  The Court's resolution of these legal issues at this stage will streamline future proceedings in the case, as it continues toward resolution, whether by trial or settlement.

## II.     <u>SUMMARY OF ARGUMENT</u>

By this Motion, the City seeks relief as to both the merits of Plaintiffs' claims and the proper measure of damages in this litigation.  As to the merits of Plaintiffs' claims, the City moves the Court for relief on three distinct issues.  First, the City seeks summary judgment on all claims asserted by Plaintiffs who have not worked more than 40 hours for the City in any workweek during the relevant period, including Lead Plaintiff Michael McGrath and Plaintiffs John Oliveira, James Hyde, Daniel Rego, and Robert Ankenbauer.  Second, the City seeks partial summary judgment on Count I, in that it does not owe overtime to Plaintiffs until they have worked 43 hours in a workweek, and that the proper denominator for calculating each Plaintiffs' regular rate is individualized, or at best 2,080 annual hours (or 40 hours per week).  Third, the City seeks complete summary judgment on Counts II and III of the Second Amended Complaint, as to all Plaintiffs, because these claims fail as a matter of law.

As to the proper measure of damages in this case, the City seeks summary judgment on four grounds.  First, the City is entitled to summary judgment that, based on the undisputed evidence, it did not willfully violate the FLSA, and indeed acted in a good faith effort to comply with the law, with respect to its regular rate calculations.  Second, the City is entitled to a judgment that it may set off any gratuitous payments that has already paid to each Plaintiff, on an inter-week (*i.e.*, cumulative) basis, against any FLSA liability it may have to Plaintiffs.  Third, if the City has liability for any delayed payments for City and/or Private Details, the proper measure of damages is limited to the interest accrued between the time that payment became due and the time of payment.  Finally, the City seeks summary judgment on that Plaintiffs cannot recover statutory prejudgment interest on their state law claims, because the City is immune from such an award under G.L. c. 231.

### III.    STATEMENT OF FACTS

**A.    The Collective Bargaining Agreement Sets Forth the Parties' Agreement with Respect to the Terms and Conditions of Plaintiffs' Compensation.**

1.    <u>The Relevant Parties to this Litigation.</u>

The City is a municipality located in Middlesex County, Massachusetts.  Defendant's Local Rule 56.1 Statement of Undisputed Material Facts In Support of its Motion for Summary Judgment ("SOF"), ¶ 1.  Plaintiffs are eighty-three (83) current and former patrol officers who are or were employed by the City's Police Department at some point on or after May 26, 2014.  SOF, ¶ 2.

The Union is the exclusive bargaining agent for all Somerville Police Patrol Officers, including Plaintiffs.  SOF, ¶ 3.  At all relevant times, the Union has been represented by the law firm McDonald Lamond Canzoneri ("Union Counsel").  SOF, ¶ 4.  Union Counsel also represents Plaintiffs in this litigation.  SOF, ¶ 5.

2.    <u>The Collective Bargaining Agreement.</u>

The relevant collective bargaining agreement between the City and the Union was originally executed on November 8, 2007 (the "CBA").  SOF, ¶ 6.  The City and the Union modified the CBA in 2009, and again in 2011.  SOF, ¶ 7.  Throughout the negotiations over the CBA and its modifications, both the City and the Union were represented by experienced labor and employment counsel.  SOF, ¶ 8.  The City relied upon its counsel, and the presence of Union Counsel, with the intention of negotiating a lawful collective bargaining agreement.  SOF, ¶¶ 9-10.

The CBA expired on June 30, 2012.  SOF, ¶ 11.  In 2014, the Union filed a Petition for Exercise of Jurisdiction before the Joint Labor Management Committee (the "JLMC") to reach a successor contract through a form of interest arbitration.  SOF, ¶ 12.  On December 22, 2016, the

JLMC modified certain terms of the CBA and implemented an "evergreen clause," which extends the CBA until the City and the Union reach a new agreement.  SOF, ¶ 13.[1]

> a.     The Relevant CBA Provisions Governing Assignments,
>        Schedules, and Shifts.

The CBA governs Plaintiffs' assignments, schedules, and shifts.  SOF, ¶ 16.  Plaintiffs are assigned, through an annual job bid process required by the CBA, to a division within the City's Police Department.  SOF, ¶ 17.  Divisions to which non-superior officers may be assigned are:  (1) patrol; (2) station; (3) neighborhood police; (4) traffic bureau; (5) criminal investigation/detective bureau; and (6) administrative duties/other.  SOF, ¶ 18.

Plaintiffs work one of two regular schedules, depending on their division assignment. Plaintiffs assigned to the patrol, station, and neighborhood police divisions work a "4 and 2" schedule, a recurring pattern of four working days followed by two days off.  SOF, ¶ 19 (the "4-2 Plaintiffs").  This schedule results in the 4-2 Plaintiffs working either four or five shifts during each calendar week.  SOF, ¶ 20.  Plaintiffs assigned to the traffic, criminal investigation/detective, or administrative divisions work a "5 and 2" schedule, a recurring pattern of five working days followed by two days off.  SOF, ¶ 21 (the "5-2 Plaintiffs").  The 5-2 Plaintiffs work five shifts per calendar week, on a regularly occurring, seven day cycle.  Compl., ¶ 10; *see* SOF, ¶ 21.

---

[1] The City is not at liberty to modify the CBA without bargaining with the Union.  *See, e.g., NLRB v. Katz*, 369 U.S. 736, 745-46 (1962) (unilateral merit increases to union members absent bargaining to resolution violated NLRA Section 8(a)(5)); *In re Higher Educ. Coordinating Counsel*, 25 MLC 141, 141, 1999 MLRC LEXIS 10, at *2, Case No. SUP-4097 (MA Labor Relations Comm'n, Mar. 9, 1999) (finding that the employer "had violated Sections 10(a)(5) and (1) of [G.L. c. 150E] by unilaterally adjusting the salaries of certain members of the bargaining unit represented by the Union without providing the Union with the opportunity to bargain to resolution or impasse").  In January 2019, the City and the Union commenced bargaining over the terms of a new CBA.  SOF, ¶ 14.  Those negotiations are ongoing.  *Id.*, ¶ 15.

Depending on their assignment and schedule, Plaintiffs work one of three eight hour shifts: (1) Day Shift (8:00 am - 4:00 pm); (2) First Half Shift (4:00 pm - 12:00 am); or (3) Last Half Shift (12:00 am - 8:00 am).  SOF, ¶ 22.  In addition, Plaintiffs assigned to the patrol and neighborhood divisions attend "[r]oll call immediately prior to the commencement of each work shift or tour of duty, not to exceed fifteen (15) minutes."  SOF, ¶ 23.  The CBA explicitly defines Plaintiffs' work day to include "not more than fifteen (15) minutes of roll call," and excludes roll call from the definition of "overtime."  *Id.*  During roll call, Plaintiffs receive a transfer of information pertaining to their duties for their upcoming shift.  SOF, ¶ 24.  Prior to bringing this litigation, no Plaintiff has ever complained to the City about the manner by which the City compensates its patrol officers for roll call.  SOF, ¶ 26.[2]

    b.  *Compensation.*

Plaintiffs' annual base salary is determined based on seniority within the Police Department (*i.e.,* Step 1, Step 2, Step 3, or Step 4).  SOF, ¶ 27.  Each Friday, Plaintiffs receive 1/52 of their annual base salary, irrespective of their actual hours worked, which is intended to compensate them for all hours associated with their regularly scheduled shifts during the preceding seven-day period, from Sunday through Saturday.  SOF, ¶ 28.  The City has operated this seven-day work period for the entire relevant period.  SOF, ¶¶ 29-31.  As the City's Payroll Director testified:

> Q:  Are you aware of the City ever implementing any *work period other than that seven day one* you just told us about?
>
> […]
>
> A:  No.

---

2 Plaintiffs who do not attend roll call do not seek to bring any claims relating to roll call compensation in this case. SOF, ¶ 25.

Q:      No, okay.  In your time as an employee of the City of Somerville, have you ever received any communications from any employee about implementing any *work period other than the seven day one* you just told us about?

[…]

A:      No.

SOF, ¶ 29.  It is undisputed that Plaintiffs are in fact compensated based on this regularly occurring, seven-day period.  SOF, ¶¶ 29-31.

Article XIX of the CBA provides for several wage enhancements that Plaintiffs are eligible to receive, over and above their base salary.  *See* SOF, ¶¶ 32-41.  Each week, all Plaintiffs receive an additional 7% of their weekly base salary, "in recognition of their availability to work nights," regardless of whether Plaintiffs actually work any night shifts.  SOF, ¶ 32 (the "Night Availability Differential").  They are also eligible to receive the following weekly wage enhancements:

- Plaintiffs who have a degree in law enforcement receive an additional 10%-25% of their weekly base salary, depending on the level of law enforcement-specific education attained, SOF, ¶ 33 ("Quinn Bill Pay"));

- Plaintiffs who work a First Half or Last Half shift receive an additional 6% of their weekly base salary, SOF, ¶ 34 (the "Night Shift Differential"); and

- Plaintiffs who work a weekend shift receive an additional $6.50 or $7.50 per hour for those shifts, paid weekly.  SOF, ¶ 35 (the "Weekend Differential").

Annually, all Plaintiffs receive a $500 "Weapons of Mass Destruction" bonus, though the CBA does not specify what this bonus is intended to compensate.  SOF, ¶ 36.  Plaintiffs are also eligible for the following annual bonuses:

- Plaintiffs who have worked for the Police Department for more than five years receive an annual bonus of $200-$3,900, SOF, ¶ 38 (the "Longevity Bonus");

- Plaintiffs who have worked for the Police Department for more than twenty years receive an additional annual bonus of $800-$3,200, SOF, ¶ 39 (the "Senior Longevity Bonus");

- Plaintiffs who have an advanced degree that is not in a law enforcement field receive an annual bonus of $300-$500, SOF, ¶ 40 (the "Non Law Enforcement Education Bonus"); and

- Plaintiffs receive an annual bonus of $425-$600, depending on their performance in a weapons performance examination, SOF, ¶ 41 (the "Weapons Qualification Bonus")).

Finally, Article IX of the CBA guarantees Plaintiffs compensation for fourteen annual holidays, including their birthdays.  SOF, ¶ 42.  Plaintiffs receive Holiday Pay in two lump sum annual payments, each intended to compensate them for seven of their fourteen paid holidays. SOF, ¶ 43.  If a Plaintiff is required to work on a holiday, s/he receives Holiday Pay, his or her regular compensation for that work day, and an additional day's pay, computed at 1/4 of his or her weekly compensation, paid in the week when the holiday work occurs.  SOF, ¶ 44.

Plaintiffs do not allege that the City has violated Articles IX or XIX of the CBA.  SOF, ¶ 45.

      *c.*     *Overtime Compensation.*

Pursuant to Article VIII of the CBA, Plaintiffs are paid at a premium rate for all hours they work outside of their regularly scheduled shifts, regardless of the total number of hours worked in a given week ("Contractual Overtime").  SOF, ¶ 46.  The CBA sets this premium rate at 1 ½ times an hourly rate that is calculated by dividing the sum of each Plaintiffs' weekly base salary, Quinn Bill Pay, and Night Availability Differential by 40 hours, again regardless of the number of hours actually worked in a given week.  SOF, ¶ 47.  Pursuant to the CBA, these three components of Plaintiffs' compensation – and *only* these three components – are to be included in calculations of the premium rate.  SOF, ¶ 48.  The CBA also requires that the denominator for the City's regular rate calculation equation is 40 hours per week (*i.e.*, 2,080 annualized hours).  SOF, ¶ 49.

Irrespective of the number of hours they work in a week, Plaintiffs are paid Contractual Overtime as follows:

- A minimum of four hours of Contractual Overtime for time spent outside of regularly scheduled shifts attending court (*i.e.,* as a witness on behalf of the City or

7

Commonwealth), irrespective of how much time they actually spend in court or traveling to court, SOF, ¶ 50;

- For time spent on "regular" police work outside their scheduled shifts, Plaintiffs receive a minimum of one hour of Contractual Overtime, after the first fifteen minutes of such work,, with all time in excess of one hour rounded up to the next full hour, SOF, ¶ 51; and

- A minimum of four hours of Contractual Overtime, irrespective of the hours actually worked, if Plaintiffs are recalled to the Police Department "or to any other place" after the end of their regular shift, SOF, ¶ 52.

In addition to these contractual minimums, Plaintiffs are also paid Contractual Overtime for hours worked on any shift outside of their regular schedule, again irrespective of the number of hours they work in a week.  SOF, ¶ 53.  If Plaintiffs miss a regular shift (*i.e.*, by taking a vacation day or a sick day) and work an extra shift in that same workweek, they are paid at the Contractual Overtime rate for hours worked on that shift, even when working less than forty hours per week. SOF, ¶ 54.

Plaintiffs do not allege the City has violated Article VIII of the CBA. SOF, ¶ 55.

        *d.*      *Police Details.*

Officers are afforded the opportunity to volunteer to work police details.  SOF, ¶ 56.  Police details are work in which an entity other than the Police Department pays for an officer to provide services such as traffic control for a construction project or security at a local bingo game, school function, or other event.  SOF, ¶ 57.  Details are not part of Plaintiffs' regularly scheduled duties. SOF, ¶ 58.  Plaintiffs are not required to perform details, and some of them have not worked a single detail in the relevant period.  SOF, ¶¶ 56, 59.

In framing their claims, Plaintiffs refer to two types of details:  City Details and Private Details.  Plaintiffs use "City Details" to refer to "situations when City workers, or a vendor hired by the City, performed work that required monitoring for public security, safety and/or traffic control by police officers," such as "when employees from the City's Department of Public Works

. . performed work on a road," or "when the School Department required a police officer for public security, safety and/or traffic control for high school sporting events such as football games, basketball games, or [a] non-sporting school event such as graduation."  SOF, ¶ 60.  The Police Department is paid by another City Department for time Plaintiffs spend performing City Details.  SOF, ¶ 61.  By contrast, Plaintiffs use "Private Details," to refer to "when a private vendor was performing work that required monitoring for public safety and/or traffic control by a police officer, such as a telephone company, electric company, gas company, or private construction company, performing work that impacted traffic on public streets."  SOF, ¶ 62.  The Police Department is paid by outside, third parties for time Plaintiffs spend performing Private Details.  SOF, ¶ 63.

Article VI of the CBA governs compensation for details.  All details (whether City or Private) are paid at a separate, designated hourly rate (negotiated between the City and the Union), which was a minimum of $40 per hour, effective October 1, 2007.  SOF, ¶ 64.  The CBA also requires that Plaintiffs receive a minimum of four hours of pay, at the negotiated detail rate, for all details, irrespective of the number of hours worked.  SOF, ¶ 65.  For road or construction details, Plaintiffs are guaranteed a minimum of eight hours pay, at the negotiated detail rate, for any detail that is longer than four hours.  SOF, ¶ 66.  Plaintiffs working details also receive time-and-half of the negotiated detail rate for hours worked on a detail in excess of eight.  SOF, ¶ 67.  Under the CBA, the City is to pay Plaintiffs for details "within twenty-one (21) calendar days after a detail has been worked and the proper documentation therefore submitted," irrespective of whether that detail is a City Detail or a Private Detail.  SOF, ¶ 68.

Detail payments are processed by employees in a Detail Office.  SOF, ¶ 69.  The City has long standing practices in the processing of detail payments.  SOF, ¶ 70.  The volume of details

worked and processed is immense.  Since May 2017, the City has paid approximately $5 million to its police officers for time spent performing details.  SOF, ¶ 71.  Plaintiffs do not allege that any of their detail work has gone unpaid; their only allegations pertain only to the timing of such payments.  *See* Compl., ¶ 38; SOF, ¶ 72.

Plaintiffs do not allege that the City has violated Article VI of the CBA.  SOF, ¶ 73.

### e.    *Union Business Days.*

Since approximately 2009, Plaintiff McGrath has served as the Union President.  SOF, ¶ 74.  As Union President, Plaintiff McGrath receives "Union Business Days," defined as "two (2) of every four (4) work shifts or tours of duty without loss of pay or benefits, for [Union] business." SOF, ¶ 75.  During Union Business Days, Plaintiff McGrath is "typically doing some sort of business," which he admits is for the Union and is "not police work, not details, [and] not overtime."  SOF, ¶ 76.  Excluding his Union Business Days, Plaintiff McGrath has not worked more than 40 hours in any workweek since May 2014.  SOF, ¶ 77.

### f.    *Special Details For Federal Agencies.*

Two Plaintiffs, John Oliveira and James Hyde, are employed by the City, but work on a long-term assignments by which they report to the Federal Bureau of Investigations and federal Drug Enforcement Administration, respectively.  SOF, ¶¶ 78-79.  These long-term assignments are voluntary, and are selected by the Chief of Police.  SOF, ¶ 80.

Plaintiffs Oliveira and Hyde report, on a daily basis, to the location of their task forces, rather than to the City.  SOF, ¶ 81.  Oliveira reports to the FBI's office in Chelsea, MA, while Hyde reports to the DEA's office in Boston, MA.  *Id.*  The Chief of Police for the City does not determine Oliveira's or Hyde's job responsibilities with their respective task forces; rather, the vast majority of the work that Oliveira and Hyde perform is done at the direction of their task force leaders, and is not done at the direction of the City.  SOF, ¶¶ 82-83.  Oliveira and Hyde also travel

throughout New England to perform task force operations, whereas Somerville police officers rarely leave the City in the course of their normal duties.  SOF, ¶ 84.  Moreover, Oliveira and Hyde are imbued with the powers of their respective federal agencies, which are not available to them in their role for the City, such as tracking phones, crossing jurisdictional boundaries into different municipalities, investigating crimes that originate outside of the City, and effecting arrests outside of the City.  SOF, ¶ 85.  They are further required to abide by the policies and procedures of their federal agencies.  SOF, ¶ 86.

> g.      *Other Plaintiffs have not worked more than 40 hours in the two years prior to filing this litigation.*

The City's payroll records demonstrate that at least two additional Plaintiffs have not worked more than 40 hours in any workweek since May 24, 2015.  SOF, ¶ 87.  The two additional Plaintiffs that the City has identified at this stage are Daniel Rego and Robert Ankenbauer.  SOF, ¶ 88.

## B.      Plaintiffs Brought this Litigation Without Attempting to Bargain Over the Underlying Issues.

> 1.      The City's Personnel Director and Payroll Director Understood that the Terms of the CBA Govern Plaintiffs' Compensation.

In approximately 2013, the City's Personnel Director, Candace Cooper, attended two courses that addressed the Fair Labor Standards Act.  SOF, ¶ 89.  During these courses, Ms. Cooper recalls discussions regarding the interplay between the contractual provisions of a CBA and the FLSA.  SOF, ¶ 90.  Her instructors informed her that unionized employees should be paid in accordance with the governing CBA, in the event of any conflict with the FLSA.  SOF, ¶ 91.  The City's Payroll Director, Phyllis Shea, attended at least one of the same trainings as Ms. Cooper, and received the same guidance.  SOF, ¶ 92.

2.      Plaintiff McGrath First Questioned His Regular Rate Calculation
        in Late 2016, and the City Promptly Investigated.

Neither Plaintiffs nor their Union ever questioned the legality of the CBA provisions

governing the rate for overtime compensation until September 2016, just months before Plaintiffs

filed this litigation.  SOF, ¶ 93.  At that time, Union Counsel emailed the City with a specific

question about Plaintiff McGrath's paycheck.  SOF, ¶ 94.  He did not question the City's more

general payroll practices, and did not raise any alleged conflict between the CBA and the FLSA.

SOF, ¶ 95.

In October 2016, Union Counsel met with the City's then-Chief Labor Counsel, Robert

Collins, and Ms. Cooper and questioned whether by complying with the CBA, the City was

incorrectly calculating Plaintiff McGrath's regular rate for the purpose of overtime compensation.

SOF, ¶ 96.  After that meeting, the City researched the FLSA and calculated Plaintiff McGrath's

pay for the week at issue in the manner that Union Counsel contended to be required, and then in

accordance with the CBA.  SOF, ¶ 97.  The City's calculations showed that Plaintiff McGrath had

received more compensation under the CBA than under the FLSA calculations as presented by

Union Counsel.  SOF, ¶ 98.  Given that the CBA was negotiated by experienced labor counsel for

both the City and the Union, that Mr. Collins believed that the CBA was legally compliant, and

that Ms. Cooper had been specifically instructed on more than one occasion that the terms of a

collective bargaining agreement supersede the FLSA as a matter of law, the City concluded that

the arrangement was lawful.  SOF, ¶¶ 8-10, 90-91, 99.

The City reported to Union Counsel the results of the City's review and conclusion that

McGrath was properly compensated.  SOF, ¶ 100.  Union Counsel did not request that the City

provide further follow up information, nor did Union Counsel or the Union file a grievance or

unfair labor practice charge of prohibited practice concerning this issue.  SOF, ¶ 101.  As far as the City understood, the issue was resolved.  SOF, ¶ 102.

>3.     <u>Plaintiffs Filed the Present Litigation.</u>

The City received no further communication regarding the calculation of the overtime rate until Plaintiffs filed this lawsuit on May 26, 2017.  SOF, ¶ 103.  By their Second Amended Complaint, Plaintiffs assert three claims against the City.  In Count I, as relates to the present Motion, Plaintiffs allege that the City violated the FLSA by:

>1.   failing to "pay Plaintiffs for all work performed in excess of 40 hours in a 7-day work period at a rate not less than one and one-half times the <u>regular rate</u> at which he is employed," Compl., ¶ 29 (emphasis in original; internal citations omitted);
>
>2.   excluding seven enumerated wage augments from its calculation of "regular rate," *id.*, ¶ 30;
>
>3.   "artificially lower[ing] the FLSA 'regular rate' . . . by dividing the annual base pay by . . . 2080 hours per year rather than the true figure of 1946.56 hours per year," *id.*, ¶ 31; and
>
>4.   "fail[ing] to account for hours worked . . . on City Details in computing total hours worked" for purposes of eligibility for overtime pay, *id.*, ¶ 31.

In Count II, Plaintiffs allege that, as a result of the alleged FLSA violations in Count I, the City is liable for treble damages and attorneys' fees under the Wage Act, G.L. c. 149, §§ 148, 150 for "fail[ing] to pay these 'earned overtime wages . . . within seven days of the termination of the relevant pay periods. . . ." *Id.*, ¶ 36.  In Count III, Plaintiffs allege that the City violated the Wage Act by paying them for City and Private Details "weeks or months following the pay periods when that labor occurred," and allegedly failing to pay for attending roll call.

## IV.   ARGUMENT

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Where a defendant's motion for summary judgment demonstrates 'an absence of evidence to support the nonmoving party's case,' the plaintiff must adduce specific facts showing that a trier of fact reasonably could find in his favor."  *Murray v. Warren Pumps, LLC*, 821 F.3d 77, 83 (1st Cir. 2016) (citations omitted).  Absent a dispute of material fact, questions of law are appropriate for resolution on summary judgment.  *Jimenez v. Peninsular & Oriental Steam Navigation Co.*, 974 F.2d 221, 223 (1st Cir. 1992).[3]

**A.     The City Is Entitled To Summary Judgment on the Merits of Plaintiffs' Claims.**

   1.     Plaintiffs Who Have Not Worked More Than 40 Hours in a
          Workweek Cannot Articulate a Claim.

In order to recover overtime damages under the FLSA, a plaintiff must have worked more than forty hours for the defendant in at least one workweek.  29 U.S.C. § 207(a)(1); *see, e.g., Manning v. Boston Med. Ctr.*, 725 F.3d 34, 43 (1st Cir. 2013) (citing *Roman v. Maietta Constr., Inc.*, 147 F.3d 71, 75 (1st Cir. 1998)); *Vinton v. Tu Moda Spa for Beauty & Wellness, Inc.*, 2017 WL 5147652, at *3 (D. Mass. Nov. 6, 2017) (recognizing same, under both the FLSA and the Wage Act).  Similarly, in order to recover damages for delayed payment under the Wage Act, a plaintiff must have actually earned wages that were delayed.  G.L. c. 149, § 150 (authorizing claim for "any lost wages and other benefits[.]"); *see McAleer v. Prudential Ins. Co. of Am.*, 928 F. Supp.

---

3 The City understands that Plaintiffs intend to simultaneously move for summary judgment on various counts.  Where both parties have moved for summary judgment, the standard of review is neither distorted nor diluted.  *Mandel v. Boston Phoenix, Inc.*, 456 F.3d 198, 205 (1st Cir. 2006).

2d 280, 287 (D. Mass. 2013) (Wage Act "provides a cause of action for loss of wages and other

benefits[.]").  Several Plaintiffs do not even meet these basic thresholds.[4]

> a.    *Union Business Days do not count towards the 40 hour*
>        *threshold.*

For example, the "lead" plaintiff in this case, Plaintiff McGrath, has not worked more than

40 hours for the City in any workweek since May 2014.  As Union President, Plaintiff McGrath

regularly takes Union Business Days, for two out of every four of his regularly scheduled shifts.

Union Business Days are excluded from the calculation used to determine whether an employee

has met the 40-hour threshold for overtime eligibility under the FLSA.  *See Local 1605*

*Amalgamated Transit Union, AFL-CIO v. Central Contra Costa Cty. Transit Auth.*, 73 F. Supp.

2d 1117, 1122–23 (N.D. Cal. 1999) (collective bargaining activities did not constitute

compensable working time under the because they were neither primarily for the benefit of the

employer nor controlled by the employer); *see also Kayser v. Sw. Bell Tel. Co.*, 912 F. Supp. 2d

803, 810–11 (E.D. Mo. 2012) (time spent reviewing employee suggestions and complaints at

union-management committee meetings not countable towards total hours worked for overtime

purposes).  Plaintiff McGrath's claims on Count I, and the claims of any other Plaintiff who has

not worked 40 hours in any workweek, should be dismissed in their entirety.

> b.    *Work performed by Plaintiffs assigned to long-term details*
>        *with outside federal agencies is excluded from the regular*
>        *rate calculations.*

Neither Plaintiffs Oliveira nor Hyde have worked 40 hours on behalf of the City in any

---

4 Primarily for this reason (with the exception of Plaintiff Berrouett), the City filed (at Plaintiffs'
request) a joint Stipulation of Dismissal, dismissing in full all claims brought by Plaintiffs Shannon
Dottin and Wolff Berrouett, and dismissing in part the claims of Plaintiffs Robert Ankenbauer,
Michael Brown, Richard Gilberti, Robert Hickey, Dorothy Nardone and Mark Nevin on February
15, 2019 (Dkt. 93).

workweek during the relevant period.  Plaintiffs Oliveira and Hyde are, and at all relevant times have been, employed by the City on a long-term assignments with outside federal agencies that are excluded from the regular rate calculations under 29 U.S.C. § 207(p)(1) (the "Special Detail Exemption"), which provides:

> If an individual who is employed by a . . . political subdivision of a State . . . in . . . law enforcement activities . . . and who . . . agrees to be employed on a special detail by a separate or independent employer in . . . law enforcement . . . the hours such individual was employed by such separate and independent employer shall be excluded . . . in the calculation of the hours for which the employee is entitled to overtime compensation. . .

29 U.S.C. § 207(p)(1).  The enabling regulation sets forth a two-part test to determine whether time is exempt from overtime compensation:  "(1) [t]he special detail work is performed solely at the employee's option, and (2) the two employers are in fact separate and independent."  29 C.F.R. § 553.227(b) (internal quotation omitted).

Plaintiffs Oliveira and Hyde each were selected by the Chief of Police to work, full-time, on long term voluntary assignments to the FBI and DEA task forces.  In these assignments, both Oliveira and Hyde work at the direction of their respective task force leaders, not the City, and perform jobs that they cannot perform as City police officers.  While the term "special detail" is not defined in the statute or its enabling regulations, one court has recognized that where an officer performs police work for an independent agency, such work is a "special detail."  *Johnson v. United Gov't of Wyandotte Cty. / Kansas City, Kansas*, 180 F. Supp. 2d 1192, 1198 (D. Kan. 2001) (a "special detail" "is a task or duty outside of or in addition to an employee's regular or normal job duties . . . but . . . need not be limited to a task or duty performed only occasionally or sporadically.  An employee performing a 'special detail' may engage in the same kind of work that he or she performs as a part of his or her regular job duties . . . but may not simply do work for his or her primary employer under a different guise.").

Oliveira's and Hyde's roles on their respective task forces fit squarely within this definition of "special detail."   As the material facts are undisputed, the Court should find that Section 207(p)(1) exempts the hours that Oliveira and Hyde work for federal law enforcement agencies from the calculation of regular rate under the FLSA, and that they have not performed more than 40 hours of work for the City in any workweek during the relevant period.

> c.      *Applying a two year statute of limitations, at least two*
> *additional Plaintiffs simply have not worked more than 40*
> *hours in a workweek.*

The FLSA's presumptive statute of limitations is two (2) years, as discussed in Part IV.B.1, *infra*.  Applying this two year statute of limitations, the record evidence demonstrates that at least two additional plaintiffs (including Daniel Rego and Robert Ankenbauer) have not worked more than 40 hours for the City in any workweek.  If the Court grants this Motion as to Part IV.B.1 and finds that the City has not willfully violated the FLSA, the Court should also dismiss Count I as to these two additional Plaintiffs.

2.      Pursuant to 29 U.S.C. § 207(k), the Proper Threshold for
        Determining Plaintiffs' Eligibility for Overtime Compensation Is
        43 Hours - Not 40.

Plaintiffs contend that they are entitled to overtime compensation, at one-and-a-half times their regular hourly rate, for "all work performed in excess of 40-hours in a 7-day work period."  Compl., ¶ 28.  However, pursuant to provisions of the FLSA applicable exclusively to public fire protection and law enforcement employees, the proper threshold for Plaintiffs' entitlement to overtime compensation is 43 hours per work period.

> a.      *Congress created a unique overtime threshold for police*
> *officers.*

The FLSA generally requires employers to provide overtime pay for each hour worked beyond forty in a workweek. 29 U.S.C. § 207(a)(1).  However, Congress created a partial

exemption for employees of a "public agency engaged in fire protection or law enforcement activities." 29 U.S.C. § 207(k) ("Section 207(k)").  This partial exemption:

> raises the average number of hours the employer can require law enforcement and fire protection personnel to work without triggering the overtime requirement, and it *accommodates the inherently unpredictable nature of firefighting and police work by permitting public employers to adopt work periods longer than one week.*

*O'Brien v. Town of Agawam*, 350 F.3d 279, 290 (1st Cir. 2003) (emphasis added).[5]  Under Section 207(k), the overtime threshold for law enforcement officers who work a 7-day work period is 43 hours in that work period.  29 C.F.R. § 553.230(c).

> b.    *The City operates a 7-day work period.*

Although "work period" is not by statute, the enabling regulations state that "work period refers to any established and regularly recurring period of work [between 7 and 28 consecutive days]." 29 C.F.R. § 553.224(a).  Both the Department of Labor and courts look to the pay period and duty cycle of officers to determine the work period, although neither alone is necessarily dispositive.  *Id.*; *see Callahan v. City of Sanger*, 2015 WL 2455419, at *11 (E.D. Cal. May 22, 2015) (looking to the City's 14 day pay period as relevant to the Section 207(k) analysis).  While the City bears the burden of proof, First Circuit precedent dictates that establishing a 207(k) work period is "not a high hurdle."  *O'Brien*, 350 F.3d at 291 n.21 (1st Cir. 2003); *see also Martin v. Coventry Fire Dist.*, 981 F.2d 1358, 1360-61 (1st Cir. 1992) (finding 7-day work period by default in absence of evidence that municipality sought to establish a work period under Section 207(k)).[6]

---

5 Section 207(k) illustrates Congress's attention to "the special concerns of States and localities[.]" *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 554 n.17 (1985).  "The work period concept was intended to ease the overtime burdens of certain public employers," namely police and fire departments.  *Calvao v. Town of Framingham*, 599 F.3d 10, 14 (1st Cir. 2010) (citations omitted).

6 Neither notice to nor consent of employees affected by Section 207(k) are required.  *Calvao*, 599 F.3d at 16-17.  In fact, there is no requirement that a public agency even intend to fall within the exemption in order for it to apply. *Farris v. Cty. of Riverside*, 667 F. Supp. 2d 1151, 1159 (C.D.

The City operates – and at all relevant times has operated – a seven-day work period under Section 207(k).  It is undisputed that each officer was paid based on an established, repeated seven-day work period.  Plaintiffs understood that they were paid for their work performed in each seven-day work period, and that those periods were regularly recurring.  *See* 29 C.F.R. § 553.224(a).  To the extent any uncertainty existed, both the City's Payroll Director and its Administrative Assistant in charge of Police Payroll quashed it in their unequivocal deposition testimony that the City operates, and has always operated during the relevant period, on a seven day work period in connection with Plaintiffs' compensation.

The evidence clearly demonstrates that the City operates, with Plaintiffs' knowledge, on a regularly occurring seven day work period.  Based on this evidence, and particularly in light of the low threshold for a municipal employer to meet the requirements of Section 207(k), the Court should find that the City meets the Section 207(k) exemption, which allows the City to require officers to work up to 43 hours in each seven-day period without incurring FLSA overtime obligations.  *See Encino Motorcars, LLC v. Navarro*, 138 S.Ct. 1134, 1142 (2018) (holding "[b]ecause the FLSA gives no 'textual indication' that its exemptions should be construed narrowly, there is no reason to give [them] anything other than a fair (rather than a 'narrow') interpretation.") (internal citations and quotations omitted).

        *c.*     *CBA provisions for contractual overtime do not affect the City's entitlement to the Section 207(k) exemption.*

Due to its collective bargaining obligations, the City has compensated Plaintiffs, at a premium Contractual Overtime rate, for hours worked outside of their regular working schedules,

---

Cal. 2009) ("the implementation of a work cycle that falls within Section 7(k) is sufficient, regardless of whether the employer has the FLSA in mind at the time of implementing the work cycle."); *Abbe v. City of San Diego*, 2007 WL 4146696, at *12 (S.D. Cal. Nov. 9, 2007).

even when they worked less than 43 hours per work period.  Those same CBA provisions sometimes require payment at a premium rate, even where an officer has worked less than 40 hours per week.  However, payments made in excess of an employer's obligations under the FLSA do not undermine its ability to take advantage of the Section 207(k) work period.  *Adair v. City of Kirkland*, 185 F.3d 1055, 1061-62 (9th Cir. 1999) (Section 207(k) work period can be established even if (a) city did not conform its payroll practices to it; and (b) city's payroll administrators were unfamiliar with Section 207(k)); *Lamon v. City of Shawnee*, 972 F.2d 1145, 1152 (10th Cir. 1992) (simply because establishment of work period "affected little change does not render it a fiction."); *Franklin v. City of Kettering*, 246 F.3d 531, 535-36 (6th Cir. 2001) (work period established even where neither duty cycle nor pay period coincided with work period).  An alternative work period can be established even where a collective bargaining agreement provides different payment terms. *Birdwell v. City of Gadsen*, 970 F.2d 802, 806 (11th Cir. 1992).  That the City paid overtime premiums without requiring that Plaintiffs exceed the 43-hour threshold does not affect the City's entitlement to the Section 207(k) exemption.  *See id.*

> d.      *The CBA establishes a 7-day work period for 5-2 Plaintiffs.*

The City expects Plaintiffs to argue that 4-2 Plaintiffs do not work on a work period that meets the Section 207(k) threshold.  This argument ignores the reality of the seven day, recurring pay cycle that the Department of Labor has acknowledged may be sufficient to establish a Section 207(k) work period, and should be sufficient to do so in this case.  At a minimum, however, there can be no question that the 5-2 Plaintiffs fall within the Section 207(k) exemption.  *O'Brien v. Town of Agawam,* 491 F. Supp. 2d 170, 174 (D. Mass. 2007) (for officers regularly scheduled for working 5 days and 2 days off, for 40 hours a week, city established a seven-day work period

pursuant to Section 207(k)).[7]   Plaintiffs concede that the 5-2 schedule is a regularly recurring, seven-day cycle.   Under any fair reading of the Section 207(k) exemption, there is no genuine dispute of material fact regarding the City's entitlement to the Section 207(k) exemption as to the 5-2 Plaintiffs.

>   3.      The Proper Denominator for Calculating Regular Hourly Rate Is
>            an Individualized Calculation or, if Determinable as to the Group,
>            is 2,080 Hours.

Plaintiffs allege that the proper denominator for calculating their FLSA "regular rate," for the purpose of overtime compensation, is 1946.56.  Compl., ¶¶ 12, 30.  While there is no binding precedent in this Circuit on the issue, Plaintiffs' position is contrary to the weight of existing authority.

>   a.      *The denominator must be determined on an individualized,*
>            *week-by-week basis based on the hours Plaintiffs actually*
>            *worked.*

The proper denominator for the regular rate calculation is the total number of hours that an employee works in a given week.   29 C.F.R. § 778.109 ("The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid.").   Notwithstanding this clear regulatory pronouncement, Plaintiffs argue that the proper denominator for regular rate is 1946.56, based on an extrapolation from the schedules of officers who work a "4-2" schedule.[8]  Plaintiffs' position is based on a misapplication of 29 C.F.R. § 778.113, which provides that "the regular hourly rate

---

7 That other officers were on a different schedule does not undermine the viability of an alternative work period for the 5-2 Plaintiffs.  *O'Brien*, 350 F.3d at 291 (*citing* 29 C.F.R. § 553.224(b)) (employer may have different work periods applicable to different employees)).

8 (365 days per year / 6 days in a 4-2 schedule rotation) x 4 working shifts per rotation x 8 hours per shift = 1,946.67.

of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate."  This framework – which provides merely one "example" of a regular rate calculation – does not apply to Plaintiffs because it is limited, on its face, to individuals employed "*solely* on a weekly salary basis[.]"  29 C.F.R. § 778.113(a) (emphasis added); *see also* 29 C.F.R. § 778.109 (noting that "[t]he following sections give some examples of the proper method of determining the regular rate of pay in particular instances. . .").

Each of the Plaintiffs receive a salary, but they also receive hourly overtime payments and various other augments.  Because Plaintiffs are not compensated solely on a salary basis, the proper denominator for regular rate is governed by the more general provision cited above, which mandates the use of all hours actually worked, on a Plaintiff-by-Plaintiff basis, as the denominator. 29 C.F.R. § 778.109 (where "earnings [are] determined on a piece-rate, salary, commission, or other basis," "the overtime compensation due to employees must be computed on the basis of the hourly rate derived therefrom and, therefore, it is necessary to compute the regular hourly rate of such employees during each workweek[.]") (emphasis added); *see O'Brien*, 350 F.3d at 289 (rejecting contention that police officers are paid on a fixed salary basis, recognizing that "officers receive more or less straight-time pay depending on how many contractual overtime hours they work each week.").

      b.    *If the denominator is based on the Parties' stated intention with respect to the compensation, the CBA mandates a denominator of 2,080.*

Recognizing that an individualized regular rate calculation based on actual hours worked may "produce[] an anomalous result, namely a 'regular rate' that varies week to week," this Court has held that regular rate for patrol officers may be computed by dividing total annual salary by "the annual total hours the salary is intended to compensate[.]" *O'Brien v. Town of Agawam*, 440 F. Supp. 2d 3, 11-12 (D. Mass. 2006).  To the extent that the Court permits a regular rate calculation

based on 29 C.F.R. § 778.113(a) – which the City submits is improper for the reasons noted immediately above – the proper denominator is 2,080 hours (i.e., 40 hours per week, 52 weeks per year).

The relevant question under Section 778.113(a) is the number of hours that the Parties "intended" the weekly salary to compensate. Here, the City and the Union specifically negotiated the formula to be used in the calculation of overtime compensation, and agreed that the weekly overtime compensation would be computed by dividing the base salary by 40 hours, which is equivalent to dividing the annual salary 2,080 hours. It is undisputed that the City has used a denominator of 2,080 in making regular rate calculations throughout the relevant period. Because the City and the Union agreed to use this denominator, and because the City has consistently complied with this agreement, the parties' negotiated-for result is controlling. *Wheeler v. Hampton Twp.*, 399 F.3d 238, 246-47 (3d Cir. 2005) (upholding use of 2,080 denominator for regular rate of police officers whose employment was governed by collective bargaining agreement, recognizing it as a "number for which the parties bargained in the CBA's overtime compensation formula," and finding that the "FLSA was not intended to limit [the] creativity of labor and management to make economically beneficial agreements.") (internal quotations and citations omitted); *Monahan v. Cty. of Chesterfield*, 95 F.3d 1263, 1277 (4th Cir. 1996) (approving use of 2,080 denominator, even where firefighters worked rotating schedules, finding "we do not believe that use of the 2,080 divisor was in any way violative of the law nor could rationally lead to an adverse inference that the agreed upon salary was intended to compensate the officers for an amount of hours below the threshold."); *Koelker v. Mayor and City Council of Cumberland*, 599 F. Supp. 2d 624, 637 (D. Md. 2009) (upholding use of 2,080 denominator in city's regular rate calculations, where contract "as interpreted by the course of conduct of the parties uses the 2,080

denominator in determining the rate for contractual overtime," noting that such result "provides a fair approximation of the result intended by the contract and the parties without adding an unnecessary level of complexity."); *cf. O'Brien*, 440 F. Supp. 2d at 11 (declining to consider defendant's argument that 2,080 is the proper denominator because parties stipulated that annual salary was "based on 1950 hours per year[.]").

4. <u>The Wage Act Does Not Multiply Damages for Alleged FLSA Violations.</u>

Through Count II, Plaintiffs assert that the ostensible FLSA violations set forth in Count I also give rise to violations of the Wage Act, in an attempt to recover treble damages and take advantage of the Wage Act's three-year statute of limitations, where the FLSA provides only for double damages (and then only if the employer cannot establish that it acted in good faith) and a default recovery period of two years.  In effect, Plaintiffs seek to use the Wage Act to end-run the specific intentions of both the United States Congress and the Massachusetts Legislature.  This Court should rebuff Plaintiffs' effort to multiply their potential recovery in a manner contrary to the legislative intent underlying the statutes that they invoke and should grant summary judgment for the City on Count II.

The FLSA was passed to deter "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a).  However, the FLSA was amended by the Portal-to-Portal Act as a check on excessive employer liability and potential windfall payments to employees, under the original provisions of the law.  29 U.S.C. § 251; *see also* Daniel V. Dorris, Comment, *Fair Labor Standards Act Preemption of State Wage-and-Hour Law Claims*, 76 U. Chi. L. Rev. 1251, 1256-57 (2009). The Portal-to-Portal Act limited the availability of liquidated (i.e., double) damages to violations

undertaken in bad faith, *see* 29 U.S.C. § 260 and limited recoverable damages by shortening the statute of limitations to two years, *see* 29 U.S.C. § 255.

The premise of Count II is that any improper calculation of Plaintiffs' regular rate under the FLSA deprived Plaintiffs of wages in violation of the Wage Act. Notably, the Massachusetts overtime statute is inapplicable to Plaintiffs because municipal employees are not subject to the overtime pay requirements of state law.[9] As a result, Plaintiffs seek to reap the enhanced damages under the Wage Act, even though the underlying practice does not violate state law. *See* Compl., ¶ 36. The First Circuit has foreclosed this strategy, declaring "[t]he FLSA is the exclusive remedy for enforcement of rights created under the FLSA." *Roman*, 147 F.3d at 76. In *Roman*, the First Circuit rejected plaintiffs' attempt to recover liquidated damages under Maine's wage laws because a "plaintiff cannot circumvent the exclusive remedy prescribed by Congress by asserting equivalent state claims in addition to the FLSA claim." *Id.* (internal quotation omitted); *Lupien v. City of Marlborough*, 387 F.3d 83, 90 (1st Cir. 2004) (rejecting plaintiff's attempt to obtain treble damages for FLSA violations as "contrary to the FLSA's aim that 'plaintiffs are entitled to be made whole, not to a windfall at the [City's] expense.') (*quoting Roman*, 147 F.3d at 77). The Court found that since the plaintiff "received compensation under the FLSA for his claims, he cannot recover again under Maine law." *Roman*, 147 F.3d at 76  The same result should enter here, and

---

9 Municipalities enjoy sovereign immunity from the Minimum Fair Wages Act, G.L. c. 151, § 1A, which governs overtime pay. *Burns v. City of Holyoke*, 881 F. Supp. 2d 232, 237 (D. Mass. 2012) (dismissing Fair Wages Act claim against city as "foreclosed" under the doctrine of sovereign immunity); *Lemieux v. City of Holyoke*, 740 F. Supp. 2d 246, 261 (D. Mass. 2010) ("[T]he legislature never intended to jettison the doctrine of municipal immunity in order to permit suits by municipal employees under the state's Fair Wages Act."); *Grenier v. Town of Hubbardston*, 7 Mass. App. Ct. 911, 911 (1979) (rescript) (upholding decision not to apply minimum wage to the town on municipal immunity grounds); *Jergensen v. Mass. Historical Comm'n*, 2015 WL 3422114, at *5 (Mass. Super. May 14, 2015) (state entity immune from claim under G.L. c. 151, § 1A).

the Court should dismiss Count II in recognition of state and federal legislative intent to limit damages for FLSA violations to those provided by the federal statute.[10]

    5.    Plaintiffs' Claims in Count III Fail as a Matter of Law.

In Count III, Plaintiffs assert Wage Act violations based on allegations that (1) they are paid for working details later than is permitted by the Wage Act, and (2) the City has failed to compensate them for attending roll call.  Compl., ¶¶ 38-39.  Both claims fail as a matter of law. The Wage Act does not control the timing of payment for details, and the CBA dictates that roll call is included in the time compensated by Plaintiffs' base salaries.

        a.    The Municipal Finance Law, Rather than the Wage Act,
              Governs Payment for Private Details.

As applied to Private Details, Plaintiffs' Wage Act claims for "late" payment for details fails because the Wage Act does not apply to Private Details.  Because Private Details are performed at the request and direction of outside third parties, and are not a part of Plaintiffs' regular police work, the wages paid by the third parties to the City, and ultimately passed on by the City to Plaintiffs, for Private Details do not fall under the Wage Act.  *See* G.L. 148, § 148 (as it relates to a city employer, the Wage Act applies only to govern the payment of wages earned by employees when "engaged in [the] business" of the city); *see Jergensen*, 2015 WL 3422114, at *4 (Wage Act "applies only to certain limited categories of [municipal] employees.")  Because Plaintiffs performing Private Details are not "engaged in the business" of the City during those

---

10 The City recognizes that, in certain circumstances, courts have permitted plaintiffs to invoke the Wage Act's enhanced damages provisions for FLSA violations.  *See, e.g., Lambirth v. Advanced Auto, Inc.*, 140 F. Supp. 3d 108, 112 (D. Mass. 2015) (Hillman, J.); *Carroca v. All Star Enters. & Collision Car Ctr.*, 2013 WL 3496537, at *3 (D. Mass. July 10, 2013).  None of these cases analyzed the First Circuit's clear, binding pronouncement in *Roman* or the interplay between the FLSA, the Minimum Fair Wages Act, and sovereign immunity.

details, the timing of payment for Private Details is not governed by the Wage Act.[11]

Rather, the Municipal Finance Law, G.L. c. 44, § 53C, exclusively governs the timing of payments for Private Details.  The statute, which has its own remedial provisions, states:

> All money received by a city . . . as compensation for work performed by one of its employees on an off-duty work detail which is related to such employee's regular employment or for special detail work performed by persons where such detail is not related to regular employment . . . shall be paid to such employee or person *no later than ten working days after receipt by the city . . . of payment for such services.*

G.L. c. 44, § 53C (emphasis added).  In *Malden Police Patrolman's Ass'n v. Malden*, the Appeals Court rejected the argument that the Wage Act overrides the more specific provisions of the Municipal Finance Law in relation to Private Details.  92 Mass. App. Ct. 53, 64 (2017).  Rather, "where the detail work is performed for third parties [*i.e.,* Private Details], the plain language of G.L. c. 44, § 53C, governs with respect to detail pay." *Id.* at 62.  As to Private Details, "[t]he more recent and more specific language of the [M]unicipal [F]inance [L]aw signals an awareness by the Legislature that when compensation for detail work is coming from a third party, a city's prompt payment of wages to officers who have performed such work may be delayed." *Id.* at 64.

Accordingly, the timeliness of payment for work performed on Private Details is governed exclusively by the Municipal Finance Law, and outside the purview of the Wage Act.  *Id.*  Because Plaintiffs have not pled a violation of the Municipal Finance Law, Count III fails as a matter of law in relation to any Private Details.[12]

---

[11] Plaintiffs appear to recognizing that work performed during Private Details is not for the benefit of the City, as they do not seek to include work performed during Private Details in their regular rate calculations.  *See* Compl., ¶¶ 22, 31.

[12] Plaintiffs have pled no violation of the Municipal Finance Law and cannot recover based on a claim they have not pled.  *Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1173 (1st Cir. 1995) ("In the absence of mutual consent, a district court may not enter judgment for a plaintiff on a cause of action that was neither pleaded in the complaint nor raised during the course of trial."); *see also Miranda-Rivera v. Toledo-Davila*, 813 F.3d 64, 75–76 (1st Cir. 2016) ("[a]llowing a

b.      *The CBA Governs Timing for Payment of City Details.*

The parties appear to agree that the Wage Act provides a remedy for any late payment for

City Details.  However, unlike private employers, cities and their municipal employees may agree

to an alternative payment schedule to supersede the Wage Act's requirements for the timing of

wage payments.  Because the CBA sets forth a payment schedule for City Details, and Plaintiffs

do not allege that the City breached those provisions, the City is entitled to summary judgment on

Count III as to the timing of payment of City Details.[13]

By default, the Wage Act prescribes that wages must be paid "within six days of the

termination of the pay period during which the wages were earned if employed . . ."  G.L. c. 149,

§ 148.  This requirement is subject to certain exceptions, including, with respect to municipalities,

that:

> every . . . city shall so pay every employee engaged in its business the wages or
> salary earned by him, unless such mechanic, workman, laborer or employee
> *requests in writing to be paid in a different manner[.]*

*Id.* (emphasis added).  The Massachusetts Appeals Court has recognized this exception, holding

that, "unions ha[ve] the authority, through collective bargaining, to exercise the employees'

election to request that payment of overtime wages be made under a different schedule than the

Wage Act provides. . . ."  *Parris v. Sheriff of Suffolk Cty.*, 93 Mass. App. Ct. 864, 865 (2018).

Such is the case here.

---

plaintiff to proceed on new, unpled theories after the close of discovery would prejudice
defendants, who would have focused their discovery efforts on the theories actually pled.").

13 The CBA language pertaining to the timing of payments for details applies to both City Details
and Private Details.  *See* SOF, ¶ 68.  However, since details paid for by third-parties are subject to
the Municipal Finance Law, the modifications to the timing requirement of the Wage Act only
apply to City details.  If the Court rejects the City's arguments with respect to Private Details, set
forth in Part IV.A.5.b herein, at a minimum the CBA modifies the timing of payment for both City
and Private Details.

*Parris* concerned employees of the sheriff's office subject to CBAs prescribing that "[e]mployees shall be paid for overtime service within twenty-five (25) working days following the month in which such service is performed." *Id.* at 866. The plaintiffs sued for failure to pay overtime within the default period prescribed by the Wage Act. *Id.* In assessing this claim, the Appeals Court gave effect to the CBA's provisions regarding timely payment by "harmoniz[ing] the Wage Act with [Chapter] 150E," and held that the overtime provision of the CBA "represents a negotiated version of a different time period for payment, elected by the employees as permitted by the terms of the Wage Act, through their collective bargaining representatives." *Id.* at 868-69.

As in *Parris*, the City and the Union negotiated a provision constituting a "request[] in writing to be paid in a different manner[.]" *See* G.L. c. 149, § 148. Article VI, Section 11 of the CBA permits the City "to pay employees for paid details within twenty-one (21) calendar days after a detail has been worked and the proper documentation therefore submitted." Plaintiffs have conceded that they do not allege that the City violated Article VI of the CBA. When pressed on this point in depositions, Plaintiffs, including Plaintiff McGrath, confirmed that they make no such claim. Plaintiffs cannot avail themselves of the default timing of payment requirements of the Wage Act, and they make no claim that the City paid for details outside of the contractually prescribed period. Plaintiffs' claims for late payment of any City Details therefore fails.[14]

   c.  *Roll call is compensated by Plaintiffs' base salary.*

In Count III, Plaintiffs claim that the City violated the Wage Act by failing to timely

---

[14]Plaintiffs acknowledged the shortcomings of Count III with respect to the timing of payment for City Details, in light of *Parris*. On October 11, 2018, Plaintiffs moved to amend their Complaint, including to add language recognizing the holding of *Parris*. *See* Dkt. 63 at 18-20 (acknowledging applicability of Parris to the timing of payment for City Details); *see also* Proposed Third Amended Complaint (Dkt. 62, Ex. 1), ¶40. Plaintiffs withdrew that motion on October 24, 2018, for reasons unrelated to their proposed amendments to Count III. *See* Dkt. 66.

compensate them for attending roll call.  As an initial matter, only a subset of Plaintiffs (those who worked in a position in the patrol division) ever attended roll call during the relevant period.  It is undisputed that, as to Plaintiffs who did not attend roll call, the City is entitled to summary judgment on Count III as to their "roll call" claim.

Plaintiffs who attended roll call were fully compensated for that time as part of their base salary.  Article 8, Section 3(a)(4) of the CBA provides that Plaintiffs who work a patrol shift attend a 15-minute roll call, and that this time is considered regular work hours, and not overtime.[15]  The record is devoid of any evidence that any Plaintiff complained to the City that they were not compensated for roll call or that this longstanding, negotiated arrangement was otherwise unsatisfactory.  Where an express agreement and the parties' course of conduct reflects an understanding that compensation for a task or duty is included in an employee's regular salary, courts give effect to that common understanding.  *Rosano v. Twp. of Teaneck*, 754 F.3d 177, 192 (3d Cir. 2014) (interpreting CBA, contract negotiations, and history devoid of complaints in holding that base salary compensated officers for roll call); *Monahan*, 95 F.3d at 1279 n.20 ("It is difficult to believe that the [employees] would blindly accept these positions unaware of the hours they would be expected to work or can now claim they were unaware of those hours in spite of their continued and repeated acceptance of paychecks under the same scheduling cycle.").  The express terms of the CBA, along with the City's consistent course of conduct, demonstrate that compensation for roll call is included in Plaintiffs' weekly salary, and they have no further entitlement to compensation for such time.  Plaintiffs' Wage Act claim seeking additional compensation for roll call fails.

---

15 That the inclusion of roll call time may push an officer's scheduled hours above 40 certain in weeks is irrelevant, given that the City's obligation to pay overtime does not arise until the officer works more than 43 hours, as discussed above.  *See* 29 U.S.C. § 207(k).

**B.      The City is Entitled to Summary Judgment as to Legal Issues
Concerning the Proper Measure of Any FLSA Damages.**

While it is foreseeable that certain factual issues will remain for adjudication by the jury

after summary judgment practice, there are several purely legal questions presented by Plaintiffs'

claims that are ripe for the Court's adjudication at this stage. *See, e.g., Urbani v. Wellesley Coll.*,

2016 WL 6571247, at *13 (D. Mass. Jan. 12, 2016) (opining, on summary judgment, as to the

proper measure of damages "[i]n an effort to narrow the issues," and because such an opinion

"address[es] a purely legal issue that both parties raise in their summary judgment papers . . . .");

*Children's Hosp. Corp. v. George Washington Univ.*, 750 F. Supp. 2d 239, 248 (opining on

damages issues, noting "[a]lthough I have found inadequate evidence to raise a factual question

concerning an actual breach of contract by GW, I will, in the interest of completeness, also consider

the damages issues, assuming arguendo that there was sufficient evidence of the actual breach.");

*see also O'Brien*, 350 F.3d at 298 ("The district court is the proper forum for litigation of damages

and related remedy issues in the first instance.").   Because the resolution of those purely legal

issues will significantly advance the litigation toward resolution, the City moves for summary

judgment on the proper measure of damages as follows.

1.      The Statute of Limitations Governing Plaintiffs' FLSA Claims Is
Two Years in the Absence of Evidence that the City Willfully
Violated the Statute.

FLSA claims are subject to a two-year statute of limitations, which may be extended to

three years only if the cause of action "aris[es] out of a willful violation."  29 U.S.C. § 255(a).  A

violation is only willful if the employer "either knew or showed reckless disregard for" whether

its payment practices violated the FLSA.  *McLaughlin v. Richard Shoe Co.*, 486 U.S. 128, 133

(1988); *Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 679 (1st Cir. 1998).  To invoke

the FLSA's three-year statute of limitations, the willful violation giving rise to the cause of action

must occur during the third year preceding the date the complaint is filed (i.e., during the period that would be time-barred by a two-year limitations period). *Solis v. La Familia Corp.*, 2013 WL 589613, at *7 (D. Kan. Feb. 14, 2013); *Donavan v. I and J, Inc.*, 567 F. Supp. 93, 107 (D.N.M. 1983) (no extension of statute of limitations because period of more than two years before filing of complaint was "a time when the Defendants were not in willful violation of the [FLSA.]"). The burden of proof as to willfulness, including that the alleged willful conduct occurred during the third year preceding the litigation, rests with Plaintiffs. *McLaughlin*, 486 U.S. at 135; *Rudy v. City of Lowell*, 777 F. Supp. 2d 255, 263 (D. Mass. 2011) (citing *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 358 (4th Cir. 2011)).

Plaintiffs cannot meet their burden. There is no evidence that the City knew or showed reckless disregard for whether its practices violated the FLSA at any time between May 26, 2014 and May 26, 2015 (*i.e.*, during the third year prior to the filing of the complaint). There is no evidence that any Plaintiff complained of the payment practices implicated by their FLSA claims in this lawsuit during that time period. Rather, the testimony of *every* Plaintiff deposed makes clear that even Plaintiffs entertained no belief, at any time prior to the filing of the Complaint, that their overtime was calculated improperly.

The evidence also establishes that City was unaware of any potential claim regarding its calculation or payment of overtime pursuant to the CBA prior to May 26, 2015. To the contrary, the City's Personnel Director specifically questioned the relationship between the provisions of the CBA and the FLSA at trainings as early as 2013, and was informed by her instructors that employees should be paid in accordance with the governing CBA. The City's Payroll Director attended at least one of these same trainings, and came to the same conclusion (*i.e.*, that the City's practices were proper).

Moreover, Plaintiffs negotiated with the City, through their Union, for the very overtime calculations that the City has consistently applied, without any party ever suggesting that the FLSA required a different approach.  Plaintiffs admit that the City has paid them in accordance with the CBA.  Under these circumstances, Plaintiffs have no prospect of showing a willful violation. *Howard v. City of Springfield*, 274 F.3d 1141, 1144 (7th Cir. 2001) (city did not act willfully when it paid police officers according to CBA that union had negotiated); *Caraballo v. City of Chicago*, 969 F. Supp. 2d 1008, 1025 (N.D. Ill. 2013) (no willfulness where "the City has demonstrated that its policy for paying paramedics was the result of lengthy negotiations with the union regarding the applicable CBA."); *Abbey v. City of Jackson*, 883 F. Supp. 181, 188 (E.D. Mich. 1995).  As no genuine issue of material fact regarding the City's willfulness between May 26, 2014 and May 26, 2015, this Court should grant summary judgment as to Plaintiffs' attempt to extend the statute of limitations beyond two years.

2.     Plaintiffs Are Not Entitled to Liquidated Damages Because the City Acted in Good Faith with Respect to Its Regular Rate Calculations.

The FLSA provides that "[a]ny employer who violates . . . this title shall be liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  However, where an employer shows that any conduct that resulted in an FLSA violation was undertaken in a "good faith" and that it had "reasonable grounds for believing" that it complied with the FLSA, the court may decline to award liquidated damages.  29 U.S.C. § 260.

The record establishes that the City acted in good faith and had reasonable grounds for believing that it complied with the FLSA.  The CBA governs the terms and conditions of Plaintiffs employment and specifically sets forth the agreed upon formula for calculation of Plaintiffs' regular rate, including that each of the various wage augments at issue in this case are excluded

from those calculations.   The City has complied at all times with its contractual arrangements, which are publicized and well known to all Plaintiffs in this litigation.   Where such a decision is "made above board and justified in public," an employer is regularly found to have acted in good faith.   *Rudy*, 777 F. Supp. 2d at 263 ("When an employer's decision is 'made above board and justified in public,' such as during collective bargaining, the employer is more likely to be found to have acted in good faith because '[d]ouble damages are designed in part to compensate for concealed violations, which may escape scrutiny.'") (quoting *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 312 (7th Cir. 1986)).

Moreover, during the bargaining sessions that led to the CBA, both the City and the Union were represented by experienced counsel, neither of whom ever raised a concern regarding the legality of the negotiated provisions.   Specifically, neither attorney ever raised any concern regarding whether the method of calculating overtime compensation in the CBA was proper under the FLSA or the Wage Act.   The City was entitled to repose in its attorney's silence on the subject, along with the silence of a Union attorney whom the City reasonably believed intended to negotiate a lawful contract, in concluding that the CBA was legally compliant.   *Brooks v. Village of Ridgefield Park*, 185 F.3d 130, 137-138 (3rd Cir. 1999) (defendant acted in good faith where both parties "retained experienced labor counsel and relied on counsels' advice during the collective bargaining negotiations," and "reasonably expected of counsel that the terms and conditions negotiated by them in good faith complied with the law."); *Featsent v. City of Youngstown*, 70 F.3d 900, 906-07 (6th Cir. 1995) ("there is no evidence that at any time the City's attorney advised the City that the Agreement's method of calculating overtime compensation violated the FLSA. From its attorney's silence, the City was entitled to the reasonable belief that the Agreement did not violate the law, including the FLSA.").

Further, neither Plaintiffs nor the Union ever raised a question about the legality of the overtime provisions at issue in this litigation until September 2016.  Even then, Union Counsel raised with the City a specific question which related exclusively to Plaintiff McGrath's paycheck. He did not question the City's more general payroll practices, and did not raise any alleged conflict between the CBA and the FLSA.  When Union Counsel met with the City's then Chief Labor Counsel and its Personnel Director in October 2016, he questioned for the first time whether the City was calculating overtime correctly under the FLSA, and asked the City to "look into it" with respect to Plaintiff McGrath.  After the meeting, the City promptly investigated the issue and concluded, based on Mr. Collins's belief from the negotiations that the CBA was legally compliant, that Ms. Cooper had been specifically instructed on more than one occasion that the terms of a collective bargaining agreement supersede the FLSA as a matter of law, and that Plaintiff McGrath in fact earned more under the CBA than he would have under the FLSA, that the City's regular rate calculation formula was correct.  Given these undisputed facts, the Court should conclude that the City has acted, at all times, in good faith with respect to its calculation of Plaintiffs' regular rate pursuant to the terms of the CBA.

3.    The City Is Entitled to Offset Any FLSA Liability with All
        Premium Payments Already Paid to Plaintiffs.

Even if Plaintiffs could establish a violation of the FLSA (which they cannot), Plaintiffs' potential damages are greatly reduced by an offset against premium payments that the City provided in accordance with the negotiated terms of the CBA, which exceed the overtime requirements of the FLSA.

Under the FLSA, certain extra compensation, including various forms of premium pay the City provides to Plaintiffs, is creditable toward statutory overtime compensation.  29 U.S.C. § 207(h)(2).  Statutory overtime liability may be offset by premium pay for: (i) hours worked in

excess of eight per day or in excess of an employee's regular working hours; (ii) work performed on Saturdays, Sundays, holidays, regular days of rest or the sixth or seventh day of the workweek; and (iii) work performed outside hours established under a CBA as the regular workday or workweek. *See* 29 U.S.C. §§ 207(e)(5)-(7).

The City pays premium compensation to Plaintiffs, pursuant to the CBA and irrespective of the number of hours they have worked in a week, as follows:

- Plaintiffs receive one-and-a-half times their regularly weekly rate for any hours worked outside their regularly scheduled shifts;

- Plaintiffs receive a minimum of one hour of premium pay for any unscheduled time that exceeds 15 minutes, and such premium pay is rounded up to the next full hour for all time exceeding the first hour;

- Plaintiffs receive a minimum of four hours of premium pay if they are recalled to the station at the end of a shift;

- Plaintiffs receive a minimum of four hours for time spent attending court proceedings outside their scheduled shift, irrespective of how much time was actually worked;

- In addition to their regular weekly compensation, Plaintiffs receive one-fourth their regular weekly compensation when they are required to work a holiday; and

- Plaintiffs receive a minimum of four hours' premium pay for any police detail worked, a minimum of eight hours' premium pay for any such detail that exceeds four hours, and premium pay on an hourly basis for any detail that exceeds eight hours.

These contractual premium payments offset statutory overtime, regardless of when the payments were made and regardless of when statutory overtime was worked. As such, the City is entitled to offset its total contractual premium payments to each Plaintiff during the limitations period against its total liability for unpaid overtime (if any) against such Plaintiff. Numerous courts, including two in this District, have held that such "interweek" offsets are appropriate under the FLSA. *See e.g.*, *O'Brien*,, 491 F. Supp. 2d at 176 (D. Mass. 2007) ("*O'Brien III*") (employer was "entitled to credit the premium portions of all contractual overtime payments regardless of

when the premiums were paid and when the overtime work occurred."); *Murphy v. Town of Natick*, 516 F. Supp. 2d 153, 161 (D. Mass. 2007) (" [Natick] is permitted to offset only the premium portions of contractual overtime payments, although it is entitled to do so on a cumulative basis."). First Circuit precedent also supports this result.  In *Lupien*, a case involving patrol officers who sued the city based on its overtime practices, the Court rejected plaintiffs' contention that any offset against FLSA liability should be limited to compensatory time taken during the same workweek in which statutory overtime was due and upheld the trial court's application of cumulative offsets.[16]   387 F.3d at 85-86, 89.  Moreover, the Court recognized that equitable principles play a role in crafting remedies for FLSA violations, and reiterated "the FLSA's aim that 'plaintiffs are entitled to be made whole, not to a windfall at the [city's] expense.'"  *Id.* at 90 (quoting *Roman*, 147 F.3d at 77).  These equitable principles were central to Judge Ponsor's application of interweek offsets in *O'Brien III*.  As he held, "[f]orcing an employer, who has given a premium rate of pay for overtime, to forego the receipt of credit and to pay additional overtime punishes the employer without regard to whether it was attempting to avoid its obligation to adequately compensate employees for extra hours worked."  *O'Brien III*, 491 F. Supp. 2d at 176.

Two non-binding decisions from this District have held that offsets should be calculated only on an "intra week," rather than interweek basis.  *See Urbani*, 2016 WL 6571247, at *15; *Rudy*, 777 F. Supp. 2d at 263.  However, these decisions are contrary to basic tenets of the FLSA,

---

[16] There is ample support for this proposition outside the First Circuit, as well.  *See Singer v. City of Waco*, 324 F. 3d 813, 828 (5th Cir. 2003) (finding proper the "offsetting the overpayments paid to the fire fighters in some work periods against the shortfalls in other work periods."); *Kohlheim v. Glynn Cty., Ga.*, 915 F.2d 1473, 1481 (11th Cir. 1990) ("county should be allowed to set-off all previously paid overtime premiums, not just those equal to or greater than 1 1/2 times the regular rate, against overtime compensation found to be due and owing[.]"); *Hesseltine v. Goodyear Tire & Rubber Co.*, 391 F. Supp. 2d 509, 523 (E.D. Texas 2005) (employer "may credit the premiums paid Plaintiffs against any additional overtime obligations incurred.").

including the absence from Section 207(h)(2) of any limitation for crediting offsets to the workweek in which they were earned.  29 U.S.C. § 207(h)(2) ("Extra compensation paid as described in paragraphs (5), (6), and (7) of subsection (e) shall be creditable toward overtime compensation payable pursuant to this section.").  Where the drafters of the FLSA intended such limitations on the operations of the statute to a given workweek, they included them expressly. *See, e.g.*, 29 U.S.C. §§ 207(a)(1) (the workweek as its basic unit of measurement); 207(a)(2); 207(e)(5); 207(e)(6); 207(e)(7); 207(f); 207(g); 207(i); 207(j); 207(l); 207(m).  Had Congress intended to impose the same limitation on setoffs under Section 207(h)(2), it would have said so. *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452 (2002) ("[I]t is a general principle of statutory construction that when 'Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'").  Congress did not limit the setoffs provided by Section 207(h)(2) to intraweek application, nor should the Court.[17]

The FLSA's enabling regulations support the same conclusion.  Numerous sections of the regulations are expressly limited to a particular workweek in which compensation was earned (*see, e.g.*, 29 C.F.R. §§ 778.103-05), including when describing how to calculate the regular rate (29 C.F.R. §§ 778.202(a)-(e), 778.203-07).  Yet when the regulations address whether various forms of extra compensation at issue here are creditable as offsets pursuant to Section 207(h), no such

---

17 Both *Rudy* and *Urbani* conflated statutory language regarding liability (*i.e.*, that overtime must be paid on a weekly basis) with the available statutory remedies. *See e.g. Urbani*, 2016 WL 6571247 at *13 (citing Rudy for premise that Section 207(a) "uses a single workweek as its basic unit of measurement."). *Rudy*, 777 F. Supp. 2d at 260 (citing 29 C.F.R. § 778.103 as "direct[ing] employers to calculate overtime liability on a weekly basis.").  But the First Circuit has held "the two questions of liability and remedy are analytically distinct," and rejected the plaintiffs' analysis based on the liability provisions of the statute when determining that cumulative offsets are appropriate in assessing any remedy due. *Lupien*, 387 F.3d at 88-89.

reference to the workweek exists. *See* 29 C.F.R. §§ 778.201(c), 778.202(a) ("… and may be credited toward statutory overtime payments pursuant to section 7(h) of the Act."), § 778.202(b) (same), § 778.203(c) (same), § 778.206 (same). As with the statute, itself, the regulations also reflect that when the Department of Labor intended offsets apply only within a given workweek, it did so expressly.[18] Had the Department of Labor intended to limit offsets to the workweek in which compensation to be offset was earned, it knew how to convey that limitation. *See Morales v. Sociedad Espanola de Auxilio Mutuo y Beneficencia*, 524 F.3d 54, 59 (1st Cir. 2008) (canons of statutory construction are "fully transferable to the construction of regulations."). The Court should not impose limitations on offsets to FLSA liability that neither Congress nor the Department of Labor have chosen to impose.

> 4. <u>For Claims Based on Late Payments, Plaintiffs Can Recover Only Interest Based on the Delay in Payment.</u>

The treble damages that Plaintiffs seek for alleged late payments are impermissible under the Wage Act. As to each detail for which Plaintiffs claim payment was delayed subsequent to their commencement of this action on May 26, 2017, Plaintiffs seek three times the *entire amount of the detail*, despite that Plaintiffs have already received – through the terms of the CBA and irrespective of this litigation – full compensation for the detail, itself. However, while the Wage Act provides for the trebling of damages, such damages are not measured by the principal amount of a delayed payment, where the payment has been made before judgment enters. Where, as here, "late" payments resulted from a disputed practice that continues after the filing of a complaint, the

---

18 The lone instance in which the regulations impose a workweek limitation relates to premiums for extra daily working hours, which are not at issue in this case. *See* 29 C.F.R. § 778.202(c) (permitting credit against overtime obligations for payment made for "daily overtime hours against the overtime compensation which is due under the statute for hours in excess of 40 in that workweek.").

plain language of the statute, precedent, and common sense dictate that the only potential recoverable damages correspond to the harm caused by the alleged delay in payment – *i.e.*, interest.

The Wage Act is intended to prevent the "long-term detention of wages by unscrupulous employers." *Segal v. Genitrix, LLC*, 478 Mass. 551, 560 (2017). "The extraordinary relief the Wage Act provides – individual liability, treble damages, and possible criminal liability – is directed at particularly egregious behavior, i.e., not paying wages for work actually performed . . . ." *Calixto v. Coughlin*, 481 Mass. 157, 262 (2018). The remedial portion of the statute does not mandate a particular measure of damages, but instead provides that "[a]n employee claiming to be aggrieved by a violation of [the Wage Act] may . . . institute . . . a civil action for injunctive relief, for any damages incurred, and for any lost wages and other benefits . . . . An employee so aggrieved who prevails in such an action shall be awarded treble damages . . . ." G.L. c. 149, § 150. By referring to "damages incurred" in the conjunctive with "lost wage and other benefits," the plain language of the statute recognizes that "damages incurred" is a potential remedy separate and distinct from "lost wages and other benefits." To find otherwise would be to ignore the plain language of the statute and to fail to give effect to the words the Legislature deemed warranted to include. *See In re Globe Newspaper Co., Inc.*, 461 Mass. 113, 118-19 (2011) (courts "construe a statute 'as written, in keeping with its plain meaning, so as to give effect to each word.'") (internal quotations omitted).

Consistent with this reading, where payment of any wages due is made before judgment enters, courts award damages measured by the time value of money during the period between the date when payment became due and the date payment was made. *See, e.g., Crowe v. Harvey Klinger, Inc.*, 2018 WL 6819329, at *11-12 (D. Mass. Dec. 27, 2018) (where payment had been made nine days after court filing, "under Massachusetts law the plaintiff would at best only be

entitled to interest on the two-week delay, not treble damages on the entirety of her delayed paychecks"); *Munson v. Valente*, 2005 WL 2461883, at *3 (Mass. Super. Aug. 4, 2005) (awarding damages for "'time value' of the period of illegal deprivation," and setting a "simple interest factor of three (3%) percent as an appropriate interest factor to be applied" for "call back duty" pay for firefighters that had become due both before and after filing of complaint); *Parow v. Howard*, 2003 WL 23163114, at *4 (Mass. Super. Nov. 12, 2003) (awarding Wage Act damages in form of interest on unlawfully delayed overtime payable to firefighters that accrued both before and after filing of complaint).

*Parow* is particularly instructive, in light of its relationship to the case at bar.  In *Parow*, firefighters sued the City of Malden, alleging untimely payment of overtime.  2003 WL 23163114, at *1.  The practice at issue remained in effect both prior to and after the complaint was filed.  *Id.* at *2.  The court found that Malden was liable for its failure to timely pay overtime but declined to apply the Wage Act's treble damages provision based upon the amount of wages paid late, and instead awarded damages in the form of interest between the date wages became due and the date they were paid.  *Id.* at *4.  As in *Parow*, the City has longstanding practices for processing and paying officers for details and overtime, which continue to the present.  Plaintiffs do not contend that their work went unpaid; they contend they were paid late.  As recognized in *Parow*, the appropriate measure of damages for any delayed payment is interest to compensate for said delay.  Any other result would be inequitable because, as the *Munson* court recognized in reaching the same conclusion, "[a] trebling of the actual wages withheld would be both a 'double recovery' windfall for the putative plaintiffs and draconian against the Town."  *Munson*, 2005 WL 2461883, at *3.

Finally, Plaintiffs' proposed measure of damages is contrary to considerations of due process.  Plaintiffs do not contend that they went unpaid, only that they were paid "late" in accordance with the law.  While this dispute may seem to present discrete and technical questions, the stakes are high.  Since May 2017, the City has paid approximately $4.8 million for police details.  Even if Plaintiffs contend that only a fraction of details were paid later than their construction of the Wage Act requires, Plaintiffs would come to seek millions of dollars in damages, based on wages that they have already received.  Under the circumstances, the Court should construe the statute in consideration of the rule of lenity and common sense.  "[W]herever possible, [the SJC] read[s] [statutes] in a commonsense manner to … avoid absurd results." *Mui v. Massachusetts Port Auth.*, 478 Mass. 710, 714 (2018) (internal citations and quotations omitted).  This is especially true for statutes imposing severe civil and criminal penalties.  *See id.*; *Commonwealth v. Traylor*, 472 Mass. 260, 269 (2015) (penal statutes are to be strictly construed).

     5.     <u>The City Is Immune from Prejudgment Interest Under G.L. c. 231.</u>

Plaintiffs cannot recover statutory prejudgment interest under G.L. c. 231 based on their state law claims.  As an initial matter, prejudgment interest is not provided for by the Wage Act. *George v. Nat'l Water Main Cleaning Co.*, 477 Mass. 371, 380 (2017) (in analyzing Wage Act remedies, "prejudgment interest is not even a category of damages[.]").  Rather, "payment of prejudgment interest in a Massachusetts court is governed by statute, either G. L. c. 231, § 6B, 6C, or 6H." *Id.* at 378.  None of these statutory sections apply here.  The City's status as a political subdivision of the Commonwealth immunizes it against prejudgment interest under Sections 6B and 6H of G.L. c. 231.[19]  While Section 6C expressly references the Commonwealth, Sections 6B

---

19 "[T]he rules of construction regarding statutory waivers of sovereign immunity are stringent." *McDonough v. City of Quincy*, 353 F. Supp. 2d 179, 190 (D. Mass. 2005) (*quoting Onofrio v. Dep't of Mental Health*, 411 Mass. 657, 659 (1992) (post-judgment interest not recoverable against public employer absent express statutory authority)).  "While the legislature has the power to

and 6H include no such reference.  *Compare* G.L. c. 231, § 6C ("in all actions based on contractual obligations . . . against the commonwealth for pecuniary damages, interest shall be added[.]") *with* G.L. c. 231, §§ 6B, 6H (including no such reference to the Commonwealth).  The omission of the Commonwealth in Sections 6B and 6H, and its inclusion in Section 6C, make clear the Legislature's intent to bar prejudgment interest awards against the Commonwealth or its political subdivisions.  *Barnhart*, 534 U.S. at 452; *McDonough*, 353 F. Supp. 2d at 190-91; *Commonwealth v. Perella*, 464 Mass. 274, 278 (2013) ("[W]here the Legislature has employed specific language in one paragraph, but not in another, the language should not be implied where it is not present.") (quotation omitted).

Plaintiffs also cannot pursue prejudgment interest under G.L. c. 231, § 6C, which applies to "actions based on contractual obligations" because their Wage Act claims (Counts II and III) are not contractual in nature, and Plaintiffs have repeatedly averred that they neither allege nor believe that the City violated the only contract bearing on the subject matter of this case, the CBA.[20]  As such, Plaintiffs cannot avail themselves of a remedy only available for contractual violations.  *See Protective Life Ins. Co. v. Dignity Viatical Settlement Partners, L.P.*, 171 F.3d 52, 54–55 (1st Cir. 1999) (denying § 6C interest and holding that "for a claim to come within the

---

abrogate municipal immunity by statute, the [SJC] has often held that consent to suit will be assumed only where it has been 'expressed by the terms of a statute, or appears by necessary implication from them.'"  *Lemieux*, 740 F. Supp. 2d at 260 (quotation omitted).

20 Wage Act damages are not themselves contract damages.  *Lipsitt v. Plaud*, 466 Mass. 240, 248 (2013).  The Court reasoned that the right to sue for nonpayment of wages existed prior to the Wage Act, when an employee's "claims for unpaid wages due him under an employment agreement were cognizable" as a "contract or quasi-contract action."  *Id*.  However, the Court emphasized that the Wage Act had added remedies "for the unreasonable detention or nonpayment of wages, including mandatory treble damages and attorney's fees[.]"  *Id*. at 251.  The Court thus held that a plaintiff could bring a contract claim "to recover . . . unpaid wages," instead of a Wage Act claim (such as when the Wage Act claim was time-barred) or in addition to or in the alternative to, a Wage Act claim.  *Id*. at 250-52.

compass of the statute, a breach of a contractual obligation must occur and that breach ultimately must ripen into a judgment for pecuniary damages.").[21]

## V.   **CONCLUSION**

For the reasons stated herein, the City of Somerville respectfully requests that the Court enter summary judgment in its favor, finding that (1) Plaintiffs who have not worked more than 40 hours for the City in any workweek during the relevant period, including Plaintiffs' McGrath, Oliveira, Hyde, Rego, and Ankenbauer, cannot establish a claim as a matter of law on Count I; (2) the City does not owe overtime to Plaintiffs until they have worked at least 43 hours in a workweek under 29 U.S.C. § 207(k); (3) the proper denominator for calculating each Plaintiffs' regular rate is individualized, or at best 2,080 annual hours (*i.e.*, 40 hours per week); (4) Counts II and III of the Second Amended Complaint fail, as a matter of law, as to all Plaintiffs; (5) the City did not willfully violate the FLSA, and indeed acted in a good faith effort to comply with the law, with respect to its regular rate calculations; (6) the City is entitled to set off any gratuitous payments that has already paid to each Plaintiff, on an inter-week (*i.e.*, cumulative) basis, against any FLSA liability it may have to Plaintiffs; (7) if the City has liability for any delayed payments to Plaintiffs for work performed on City and/or Private Details, the proper measure of damages is limited to the interest accrued between the time that payment became due and the time of payment; and (8) the City is immune from prejudgment interest under G.L. c. 231 on Plaintiffs' state law claims.

---

21 To the extent that Plaintiffs were entitled to prejudgment interest pursuant to Section 6C, the appropriate rate of interest would be the one-year treasury bill rate, not the 12% per annum that Plaintiffs seek.  *See* G.L. c. 231, § 6C.

Dated:  February 15, 2019                    Respectfully submitted,

                                             CITY OF SOMERVILLE,

                                             By its attorneys,


                                             _____*/s/ Alison H. Silveira*_____
                                             Barry Miller, BBO #661596
                                             Alison H. Silveira, BBO #666814
                                             Timothy J. Buckley, BBO #691200
                                             SEYFARTH SHAW LLP
                                             Seaport East
                                             Two Seaport Lane, Suite 300
                                             Boston, MA 02210-2028
                                             617-946-4800
                                             bmiller@seyfarth.com
                                             asilveira@seyfarth.com
                                             tbuckley@seyfarth.com


                                             Shannon Phillips, BBO #685450
                                             David Shapiro, BBO #565564
                                             Assistant City Solicitors
                                             Law Dept., City Hall
                                             93 Highland Avenue
                                             Somerville, MA 02143
                                             (617) 625-6600, ext. 4400
                                             sphillips@somervillema.gov
                                             dshapiro@somervillema.gov

## <u>CERTIFICATE OF SERVICE</u>

I, Alison Silveira, hereby certify that on February 15, 2019 this document was filed through the Court's ECF system and that Plaintiffs' counsel includes registered users designated to receive Notices of Electronic Filings in this matter.

/s/ *Alison Silveira*
Alison Silveira