# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL MCGRATH, et al., ) | |
| ) | Civil Action No. |
| Plaintiffs, ) | 17-10979-FDS |
| ) | |
| v. ) | |
| ) | |
| CITY OF SOMERVILLE, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM AND ORDER ON
# MOTIONS TO STRIKE

**SAYLOR, J.**

This is an action for violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, §§ 148, 150. Plaintiff Michael McGrath and 82 other individually named plaintiffs are current and former police officers who are or were employed by defendant the City of Somerville, Massachusetts, between May 26, 2014, and May 26, 2017. The complaint alleges that McGrath and the other officers regularly worked more than 40 hours a week but were not paid overtime as required by law. Essentially, plaintiffs allege that they were underpaid because the City of Somerville miscounted their overtime hours.

The parties have filed cross-motions for summary judgment. The City of Somerville has also filed two motions to strike portions of plaintiffs' statement of material facts. For the following reasons, the first motion will be granted in part and denied in part, and the second motion will be denied.

A.      **The City's First Motion to Strike**

On February 15, 2019, when plaintiffs filed their motion for summary judgment, they submitted affidavits by Michael McGrath, James McNally, and Kevin Goulart. The City has moved to strike various portions of those affidavits on the grounds that (1) some of the statements are not based on the affiants' personal knowledge, (2) some are improper conclusory statements, and (3) some directly contradict the affiant's prior deposition testimony.

1.      **Alleged Lack of Personal Knowledge**

The City seeks to strike several paragraphs from all three affidavits that it contends are not based on the affiants' personal knowledge: nine from the First McGrath Affidavit, four from the McNally Affidavit, and three from the Goulart Affidavit.

a.      **McGrath Affidavit**

The City seeks to strike the following nine paragraphs of the McGrath Affidavit that describe paid details and the City's payroll processes for details:

> Paragraph 15: DETAILS are worked on behalf of third party vendors (hereinafter "Private details") as well as on behalf of the City (hereinafter "City details").
>
> Paragraph 16: Private details are procured by a third party that contacts the City to request a detail officer for work being performed by the third party, i.e., work of a third party that is not being performed at the request of the City.
>
> Paragraph 17: City details are procured by a City department such as the City's Department of Public Works ("DPW"), Office of Strategic Planning and Community Development ("OSPCD"), School Department, or Engineering, in conjunction with a need for a detail officer to be attending to an activity or security function at a City facility, work of City employees, or work being performed by a third party with whom the City contracted to perform work on behalf of the City. The City's police department detail clerks make entries in a computer program called "Extra Duty" to record the specifics for both Private details and City details.
>
> Paragraph 23: For each paycheck in which DETAILS are paid to police officers, the police department detail clerk prepares a document referred to herein as an "Export." The Export is emailed each week to all patrol officers and itemizes, by

police officer, the specific details that the police officer worked that are being paid to each police officer in that week's pay check; the date when the detail was worked by the police officer that is being paid; and the amount being paid for the detail.

Paragraph 24: The weekly Export report for each workweek in the period May 2014 to present, establish which DETAILS are City details, to the extent that they list a City department or the City itself in the column next to each of the DETAILS being paid in that paycheck. In particular, for each police detail itemized on the Export as paid to a police officer in that week's paycheck, there is a listing of an entity. Where the Export lists the entity as a department of the City or the City itself—e.g., "City of Somerville," "DPW" (Department of Public Works), "School Department," or "OSPCD" (Office of Strategic Planning and Community Development)—those entries denote that the detail is a City detail.

Paragraph 25: The Export also lists third parties (i.e., entities that are not City departments) next to some details. Though the listing of a third party sometimes indicates that the corresponding detail is a Private detail, in some instances a third party is listed for a City detail. One example of this is the listing of "P.T. Kelley," a company with which the City contracts for water infrastructure work. P.T. Kelley is listed next to a detail regardless of whether the detail is a Private detail (i.e., when P.T. Kelley is working for a private party) or a City detail (i.e., when P.T. Kelley is working under contract with the City).

Paragraph 29: For some private parties with whom the City contracts to perform work on behalf of the City, the Export document prepared by the Police Department detail clerks shows that the detail is a City detail. One example of this is when the City contracts with Gioioso Construction to perform construction on behalf of the City; even if the Plaintiff on the detail slip lists the organization for whom the detail is performed as "Gioioso Construction," the Export reflects the detail as having been procured by the "City of Somerville DPW" or other City department.

Paragraph 30: The Export sheets for the period May 2014 to present, establish the date when each Plaintiff worked DETAILS, and the date when each Plaintiff was paid for having worked such DETAILS.

Paragraph 32: The account referred to in the CBA at Article VI, Section 11, "Paying Police Details," SMF at ¶31, is for purposes of the City depositing funds when a private vendor is delayed in paying a detail. The City pursuant to this provision is to advance the money to pay for the detail and then obtain reimbursement thereafter from the private vendor once that private vendor makes payment.

The City contends that McGrath has not established any personal knowledge about the

detail office's administrative processes. According to the City, McGrath does not claim he ever worked in the office or personally observed its processes, and the City's senior detail coordinator says McGrath never worked there, (E. Roche Decl. ¶ 11). In response, plaintiffs point to McGrath's statement that "[b]y my employment in various positions and as a union officer I have come to know the specific aspects of the City's Police Departments [sic] operations and compensation practices. . . ." (First McGrath Aff. ¶ F). Plaintiffs also reply that McGrath has himself worked a handful of detail shifts. (McGrath Dep. at 85-86).

Paragraphs 15-17 are mostly general descriptions about paid details. These statements are plausibly based on McGrath's personal knowledge as a police officer who has worked details and are thus admissible. However, the final sentence of paragraph 17 describes a process internal to the City's detail office. That sentence will be struck because McGrath does not explain how he has personal knowledge of how that office operates.

Paragraphs 23-25, 29, and 30 describe a weekly report itemizing the details worked by all officers that is prepared by the detail office and distributed to all patrol officers. Because that report is distributed to all patrol officers, and McGrath is a patrol officer who has previously worked details, he presumably is familiar with those reports. Accordingly, those statements will not be struck.

Paragraph 32 will be struck, not because it describes the internal operations of the detail office, but because it sets forth a legal conclusion about what the CBA requires of detail payments.

    b.    **McNally Affidavit**

The City seeks to strike paragraphs 7(D)-(G) of the McNally Affidavit. In those paragraphs, McNally describes the hours he worked between October 22 and October 28, 2017.

4

(McNally Aff. ¶¶ 7(D)-(G)). He provides documentary evidence such as overtime reports and pay slips for some of these statements, (*id.* ¶¶ 7(E)-(G)), although others appear to be based exclusively on his memory, (*id.* ¶ 7(D)).

The City contends McNally has not laid a sufficient foundation for his recollection of such distant events. But as an employee, McNally would be in a position to know the hours he worked and the compensation he received on a particular week. The City's argument is a challenge to the weight or credibility of McNally's assertions about the hours he worked, not their admissibility. The statements therefore will not be struck.

### c. **Goulart Affidavit**

The City seeks to strike paragraphs 8(D), (E), and (H) of the Goulart Affidavit. Those statements closely resemble paragraphs 7(D)-(G) of the McNally Affidavit, and the City's objections are the same. Thus, for the reasons set forth above, those paragraphs will not be struck.

### 2. **Alleged Conclusory Statements**

Next, the City seeks to strike five paragraphs, four from the McGrath Affidavit and one from the McNally Affidavit, that it contends are impermissible legal conclusions or unsupported factual conclusions.

### a. **McGrath Affidavit**

The City seeks to strike portions of four paragraphs from the McGrath Affidavit.

In paragraph 2, the City seeks to strike the portion describing the SPEA as an "'employee organization' under the state collective bargaining law, M.G.L. Chapter 150E, §1. . . ." That is a conclusion of law and will be struck.

In paragraph 3, the City seeks to strike the portion describing the City as a "public

5

employer under the state collective bargaining law, M.G.L. Chapter 150E, §1." That, too, is a conclusion of law, and will likewise be struck.

In paragraph 12, the City seeks to strike the portion alleging that "the City does not compensate for the time that Plaintiffs spend in attendance at roll call" on the ground that it is a conclusion of law or, alternatively, an unsupported factual assertion. The Court agrees. McGrath's statement rests exclusively on an excerpt from the CBA. His statement is either an interpretation of the CBA, and thus an inadmissible conclusion of law, or a factual assertion about whether the City pays plaintiffs for roll call attendance, in which case it is inadmissible because it lacks any support beyond the CBA excerpt. Either way, it will be struck.

In paragraph 14, the City seeks to strike the portion alleging that "[p]laintiffs are required to work 1946.56 hours per year in exchange for base salary." That statement will be struck as well. McGrath's only support for that number (1946.56 hours per year) are a set of a calculations based on the terms of the CBA, and his interpretation of what those terms require is an impermissible conclusion of law.

### b. McNally Affidavit

The City seeks to strike a portion of paragraph 6 of the McNally Affidavit, which alleges that "I am given extra days off to equalize my schedule over a calendar year with another schedule pattern known as a 4-2 schedule . . . ." on the ground that he provides no factual basis for claiming that his days off are intended to equalize schedules. Because that statement appears to have no foundation, it will be struck.

### 3. Alleged Contradictory Statements

Finally, the City has moved to strike a statement in the McGrath affidavit that it contends contradicts his prior deposition testimony. When "a party has given 'clear answers to

unambiguous questions' in discovery, that party cannot 'create a conflict and resist summary judgment with an affidavit that is clearly contradictory.'" *Hernandez-Loring v. Universidad Metropolitana*, 233 F.3d 49, 54 (1st Cir. 2000) (quoting *Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4-5 (1st Cir. 1994)). However, such an affidavit may be accepted if the party provides a "satisfactory explanation of why the testimony [has] changed." *Id.* (alteration in original). "Whether there is a contradiction and whether the explanation for it is satisfactory are both likely to depend very much on an assessment of specific facts. . . ." *Id.* Lapses in memory or new sources of information may be acceptable explanations for a revision in testimony. *Id.*

The City seeks to strike the following statement from McGrath's affidavit:

Paragraph 34: To my knowledge the City has never advised the patrol officers or the SPEA that it operated a work period under Fair Labor Standards Act, 29 U.S.C., §207(k), and has not operated a work period under Section 207(k). The first time I learned that the City claimed it operated a work period under Section 207(k) was when the City filed its Answer in this matter, after the lawsuit was filed in May 2014.

The City contends that the statement contradicts a Charge of Prohibited Practice filed on January 2, 2018, by the SPEA against the City with the Department of Labor Relations. (Buckley Supp. Decl., Ex. 4 at 2). That Charge alleged that the City violated Massachusetts labor law by "[f]ailing to give [the SPEA] notice and an opportunity to bargain regarding the decision . . . to adopt a special work period under Section 7(k) of the Fair Labor Standards Act (FLSA), 29 U.S.C. §207(k), prior to informing [the SPEA] of this for the first time on July 25, 2017, retroactive to at least May 26, 2014." (*Id.*). The Charge sought as a remedy to "restore [the] status quo ante by rescinding [the] Section 207(k) work period retroactive to at least May 26, 2014; make whole; refrain from implementing without exhausting bargaining process; posting of notice; other appropriate relief." (*Id.*).

The McGrath Affidavit and the Charge are not necessarily inconsistent. In McGrath's

7

affidavit, he contends that the City never advised the union operated a work period under Section 207(k) and that the City never claimed to do so until filing its answer. The Charge alleges that the City, by later claiming in its answer that it had in fact adopted a special work period, failed to give the SPEA adequate notice and an opportunity to bargain. The City appears to contend that McGrath has, by filing the Charge, contradicted his statement that it never adopted a special work period. The Charge does not, however, concede that the City had properly adopted a special work period by alleging one in its answer; to the contrary, the Charge seeks as relief the rescission of any such period. McGrath's allegation is thus arguably consistent. Accordingly, the motion to strike will be denied as to paragraph 34.

**B.      The City's Second Motion to Strike**

On March 15, 2019, when plaintiffs filed their cross-motion for summary judgment, they submitted a second affidavit from McGrath. The City has moved to strike the following portions of that affidavit:

> Paragraph 4: As explained below, the workweek of January 25-31, 2015 is an example of a workweek where I worked all five of my regularly scheduled shifts as a Traffic Officer and took no "union business days." I have confirmed this week through the On Duty system records that have been produced in this lawsuit.
>
> Paragraph 5(D): In the workweek Sunday January 25 to Saturday January 31, 2015, I worked 40 hours in my regularly assigned police shifts, in a 5-2 schedule.

The City has moved to strike those statements on the grounds that (1) some of the statements are not based on McGrath's personal knowledge, and (2) some directly contradict his prior deposition testimony.

**1.      Alleged Lack of Personal Knowledge**

The City seeks to strike portions of that paragraph on the ground that McGrath has not laid a sufficient foundation for his recollection of what hours he worked in January 2015. That is

8

an argument concerning his credibility, which is not a proper subject for a motion to strike. Accordingly, the paragraphs will not be struck.

## 2. Contradictory Statements

Next, the City seeks to strike portions of that paragraph on the ground that they contradict McGrath's sworn deposition testimony. It contends that his statements about the hours he worked in January 2015, and his statement that he confirmed them by a review of the On Duty system records, are contradicted by his deposition testimony.

McGrath was shown several On Duty records at his deposition. He was asked if he "ha[d] any reason to think that whatever's in the On Duty system is inaccurate or incomplete[.]" (McGrath Dep. at 108). He answered, "No reason to believe it, but I've never really delved into it either." (*Id.*). After McGrath had reviewed several records from the system, he was asked whether he had "any information contrary to the conclusion" that there was "no workweek in which [he] had worked more than 40 hours as recorded in the On Duty system" between May 1, 2014, and May 14, 2018. (*Id.* at 248). He answered, "No." (*Id.*).

As discussed above, a party "cannot 'create a conflict and resist summary judgment with an affidavit that is clearly contradictory,'" but such an affidavit may be accepted if the party provides a "satisfactory explanation." *See Hernandez-Loring*, 233 F.3d at 54 (quoting *Colantuoni*, 44 F.3d at 4-5).

First, it is unclear whether there is any contradiction. McGrath's affidavit states in ¶ 5(D) that he worked 40 hours the week of January 25-31, 2015; at his deposition, he acknowledged that the On Duty records did not show he worked more than 40 hours that week.[1] If there is a

---

[1] In ¶ 5(E), which the City has not moved to strike, McGrath does claim to have worked 8 more hours (in excess of 40) on the week of January 25-31, 2015. Even if the City intended to strike that statement, it is not inconsistent with McGrath's deposition testimony. In McGrath's affidavit, he only claimed to have relied on the On

9

contradiction, it relates to his statement that he confirmed through On Duty records that he took no union business days that week. The On Duty records shown to him at his deposition indicate that in fact he took two union business days that week. (*See* Silveira Decl., Ex. 1; McGrath Dep. at 248). While McGrath testified that he had no reason to doubt the On Duty records, he did not admit he had not actually consulted them. Thus, McGrath's answers in deposition could be used, at most, to undermine his credibility about whether he had consulted the On Duty records, but not to contradict that statement directly.

In any event, if there is a contradiction, McGrath has provided an explanation sufficiently satisfactory to avoid a motion to strike. McGrath submitted a third affidavit in which he explains that the document referred to in his second affidavit was in fact a payroll report, not an On Duty record. (Third McGrath Aff., ¶¶ 6-7). He states that he incorrectly understood that document to be an excerpt from an On Duty system record; that he had not previously reviewed the records shown to him at his deposition; and that he did not intend to indicate that he had done so. (*Id.*). Therefore, paragraphs 4 and 5(D) of McGrath's second affidavit will not be struck.

**C.**  **Conclusion**

For the foregoing reasons,

    1.    The motion to strike of defendant City of Somerville (Docket No. 107) is GRANTED in part and DENIED in part, as set forth in this memorandum and order.

    2.    The motion to strike of defendant City of Somerville (Docket No. 115) is DENIED.

---

Duty records to confirm that he took no union business days, not to determine the number of hours he worked. (*See* Second McGrath Aff., ¶¶ 4, 5(D)).

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Dated: September 30, 2019	United States District Judge